19L 557
45 683
19L 557
46 123
19L 557
48 98
49 1539

## ROWLEY vs. ROWLEY.

APPEAL FROM THE COURT OF THE NINTH DISTRICT, FOR THE PARISH OF CONCORDIA, THE JUDGE THEREOF PRESIDING.

This court will take jurisdiction of a suit for separation from bed and board, although the matter in contestation is not *appreciable in money*, or does not consist in a money demand exceeding 300 dollars.

The law expressly gives the courts jurisdiction in cases of separation from bed and board, and in actions of divorce; and this court will not hesitate to act under it, when they have not the slightest doubt of the constitutionality of the law.

Upon affidavit made, and in consideration of its being the first term, a continuance should be allowed; but if on appeal it appears, that by the admissions of the adverse party, &c., no injury is sustained by going to trial, the case will not be remanded on this account.

Living unhappily together; having frequent differences, ebulitions and displays of temper, but without any personal or other violence; the want of supplies or necessaries according to the wife's demands; the non-payment of her bills promptly, and education of her daughter; the want of support according to her rank and fortune she brought to the marriage, and supposed impossibility of the parties ever living together again, are not sufficient *cause of separation from bed and board*.

WESTERN DIS.
October, 1841.

ROWLEY
vs.
ROWLEY.

Where a woman has her domicil here, and marries in another State, it does not prevent a community of acquests and gains from existing, when the parties afterwards remove to Louisiana.

In a judicial sale for a partition among several heirs, the husband of one of them may purchase the entire property sold, which becomes community property from that time; he being responsible to the wife for the price only.

Where, in a purchase by the husband, the portion of the wife in the estate sold is imputed to the extinguishment of the price to be paid by him, he is bound to her for it, with a legal mortgage to secure it, if he administers her paraphernal estate.

If the wife have a fortune, and is in the administration of it, and the husband little or none, she is bound to pay or contribute at least half of the matrimonial charges.

The wife is not entitled to interest on recovering her paraphernal property, when the husband administers it, or when it is administered indifferently by the husband and wife; as the fruits of paraphernal property, except the young of slaves belong to the community.

During the pendency of a suit of the wife for a separation from bed and board, the wife may leave the home assigned as her residence, on business, and be temporarily absent.

A judgment for alimony may be given, even when no separation from bed and board follows.

The court may, in its discretion, change the residence of the wife during the pendency of her suit for separation.

This is an action by the wife against the husband for a separation from bed and board, and also for a separation and partition of property.

The plaintiff alleges, that in the spring of 1834, being on a visit to the city of Troy, in New York, where her daughter by a former marriage was then at school, she intermarried with Charles N. Rowley, of that State, and in the latter part of the year she returned with her husband to Louisiana, where they have both ever since resided.

The petitioner shows, that at the time of marriage with the defendant, she owned and possessed an undivided third part of a large plantation and slaves, formerly the property of her ancestor, situated in the parish of Concordia, and then owned and held in partnership between her and her sister, Mrs. Sprague,

WESTERN DIS.
October, 1841.

ROWLEY
vs.
ROWLEY.

and James Kemp, her brother; her interest and share therein being $47,000; that in June, 1835, the Marengo plantation and slaves were sold to effect a partition between her and her co-proprietors, and adjudicated to the defendant, who became possesed of this large estate, from which he has ever since derived large yearly revenues.

She further shows, that her marriage with the defendant has been destructive of her own happiness and peace of mind, and deeply injurious to the interests and future prospects of her only child of her former marriage; that ever since her said marriage, her husband has pursued towards her a course of injustice and oppression, evincing a total disregard of her feelings and rights, and has been guilty of repeated acts of cruel treatment and outrage to her feelings, of such a nature and degree as to render their living together *insupportable;* that she has acted towards her husband as a faithful and dutiful wife, but has suffered for years past under the deepest distress of mind, inflicted on her by his unjust and unnatural conduct. Finding that her living any longer with her said husband would be altogether insupportable, on the 15th December last (1840) she left his domicil, with her daughter, and is now impelled to seek relief from this court.

She further shows, that when she intermarried with the defendant, she was in affluent circumstances, and he was without means; and she placed him in possession of all her fortune and property; that he has made large revenues therefrom, but has refused to her the common necessaries of life, or even the smallest sums of money for herself and daughter. She alleges and sets forth various other acts of her husband tending to her injury and degradation, and that of her daughter as additional causes of separation.

She prays for leave to institute this suit; that she have judgment of separation from bed and board; and as she is without an income, that a domicil be assigned her, with an allowance of $200 per month, during the pendency of this suit; and finally, that she be decreed separated in property, and have the

possession and administration of her separate estate restored to her, with one half of the acquests and gains, and that a final partition and division be made.

The petition was sworn to, and the petitioner authorized by the judge to institute and prosecute this suit; her domicil fixed at the house of M. Debruys, in the parish of St. James, with a monthly allowance of $200, to be paid by the defendant, during the pendency of the suit.

The defendant pleaded a general and special denial of every allegation and charge in the petition, except such as were expressly admitted or modified. He regrets, that the daughter is brought into this controversy and avers he has always treated her with the greatest regard and respect, and bears willing testimony to her amiable and affectionate disposition and engaging manners. He denies having ill-treated, or being guilty of any cruelty and oppression towards the plaintiff; that since his marriage his life has been much embittered, and his peace of mind destroyed by the frequent paroxisms of her ungovernable passions, which arising from the slightest possible causes, or from no cause whatever, for a time deprive her almost of her reason: such has been her state of mind during her present and former marriage, from her peculiar cast of mind and temper, that he attributes to it the cause of all the disagreements and difficulties with both her husbands. He admits, that her general demeanor and conduct towards him have been that of a kind and affectionate wife; and so long as her mind remained calm, her conduct was praiseworthy; that he has forbore, and by gentleness endeavored to sooth her when angry and excited. He expressly avers, he has always strove to provide the plaintiff and her daughter with the conveniences and comforts of life suitable to their condition and his pecuniary means, and that her complaints are unfounded in this respect. He admits she was a frugal and industrious wife, often laboring with her hands and needle in making his clothes, and performing the duties of the household; but it was all her voluntary act.

The defendant admits, that on the 15th June, 1835, he be-

came the purchaser of the Marengo plantation and slaves for $137,500, which had been previously owned by the plaintiff and her two co-proprietors, as she has alleged; that by said purchase he became the owner of said property and its increase, and bound for the price; that there exists a community of acquests and gains. He avers, he has devoted his best energies to improve and increase the community of property; appropriating nothing to his own exclusive use or advancement of his private interests. In conclusion he denies ever pursuing towards his wife a system of oppression and cruelty, or that he has ever been regardless of her feelings, and treated with indignity; and he has given her no justifiable cause either to abandon his domicil or institute this action. He prays, that the suit be dismissed; the plaintiff's demand rejected as unjust and unfounded, and in case of separation, that he be decreed to be the owner of the Marengo plantation and slaves, with their increase and all the other property thereon; that the community be settled and divided among them.

Upon these issues and pleadings the cause was tried. There was a mass of testimony taken on both sides, in support of the respective allegations and averments of the parties, which comes up in the record, and is too voluminous to be detailed. It is fully stated in the opinion of this court.

There was judgment for the plaintiff, decreeing a separation from bed and board; and of property, goods and effects of every kind; also for $4,306; that she be put in possession of one-third of the Marengo plantation and slaves, with their increase, as she owned them previous to her marriage; and also that she recover one half of the acquests and gains made during marriage, and a partition made of all the property; the defendant to pay the costs of suit; the costs of partition to be borne equally by the parties. The defendant appealed.

*A. N. Ogden & Dunbar*, for plaintiff, argued at much length. They contended, that the grievances and outrages towards the wife and her daughter, as set out in the petition, were fully

sustained by the evidence, and were good grounds for a separation from bed and board; and in this respect the judgment of the inferior court must be affirmed.

2. The answer refers to plaintiff's conduct towards her first husband. The evidence fully establishes the fact, that he treated her cruelly; was intemperate, and his conduct very bad. This fully accounts for her deportment as detailed by the witnesses. Violence towards the wife is not necessary to be proven. If excesses and brutal treatment of her is shown, which renders their living together insupportable, it is sufficient to authorize a separation; 9 Martin, 452; 2 Toullier, No. 764; 2 Duranton, Nos. 531, 552, 553.

3. It is shown, that the defendant after he became possessed of all his wife's means and fortune, and in the possession of large property, was exceedingly parsimonious towards her and her daughter; denying the means of a comfortable and decent support; often even the necessaries of life were denied her.

4. The plaintiff's counsel further contend, that the Supreme Court has no jurisdiction of a question of divorce itself, because it is not a money demand: but it has of the question of a separation of property and the restoration of the paraphernal estate. 3 Martin, 44.

5. The appellate court may entertain jurisdiction of part of a case, and not of the remainder. 4 Wash. C. C. Rep., 492. As to the paraphernal property, the plaintiff is entitled to recover one-third of the Marengo estate in kind, because the husband could not purchase the interest of his wife therein. The husband cannot purchase from the wife. La. Code, art. 2421; 13 La. Rep., 173; 14 Idem, 115; 12 Toullier, Nos. 155-6.

*Stacy & Gen. Huston,* for the defendant and appellant, insisted, that the allegations in the petition were vague and insufficient to establish the plaintiff's case. Those relative to cruel, oppressive and other bad treatment are vague and general, and refer to no particular acts or conduct of the hus-

band. The only real and definite allegation is the one in rela- tion to the want of necessaries and the comforts of life, and that they were not furnished or allowed. If this were the fact, she had her remedy without a resort to this action. The evi- dence does not sustain the allegations as to oppressive and cruel treatment, and furnishes no ground for separation.

2. It is shown, the plaintiff had an allowance of $600 a year, for clothing of herself and daughter, besides market money, amounting to from $4 to $10 per week. Other advances and allowances were made; and plaintiff's own testimony shows, she was amply supplied with necessaries, &c.

3. The defendant by purchasing the Marengo estate, made it community property; he was also responsible to the wife for her share of the *price*. The sale was made to effect a partition among co-proprietors, of whom, his wife was one, and he had a right to purchase. The Marengo estate then became commu- nity property, with all the increase and young of slaves. 18 La. Rep., 351; 12 Idem, 107; La. Code, 2341, 2420 and 1784.

4. The plaintiff has failed to make out her case for a separation according to law; the opinions of her witnesses are not to be taken, but facts. La. Code, 138. All she can claim is the possession and administration of her paraphernal property; and this without recovering any interest on the amount.

*Garland, J.* delivered the opinion of the court.

This action is instituted for a separation from bed and board; a recovery of the paraphernal property of the wife, a dissolu- tion and settlement of the community of acquests and gains and partition of the same.

The petition states the parties were married in the State of New York in the month of April, 1834, the plaintiff being a resident of the State of Louisiana, and the defendant then a resident of the former State. That in the autumn of that year

the plaintiff returned with her husband, and they settled in the parish of Concordia, which was the domicil of the wife previous to and at the time of her marriage, where she owned a considerable property in land and slaves. The petition goes into a long detail in relation to the property she owned at the time of the marriage, the fact of being previously married and having a daughter, all of which circumstances and allegations will be hereafter noticed in connection with the decision upon the law and evidence of the case. She further alleges that with a view to the promotion of the happiness of herself and daughter, she married the defendant relying on his professions of attachment, but all her hopes and expectations have been blasted and the marriage has proved destructive to her peace and happiness and injurious to the interests and future prospects of her daughter. That ever since the marriage her husband has pursued towards her a course of injustice and oppression evincing a total disregard of her rights, wishes and feelings, and has been guilty of repeated acts of cruel treatment and outrage to her feelings, of such a nature as to render their longer living together insupportable.

The petitioner further represents that in consequence of the conduct of defendant she has been compelled to leave the common dwelling and commence a suit for separation. It is further represented that as she reposed entire confidence in her husband she had permitted him to administer all the property, whether paraphernal or otherwise, which was very large, and he had neglected and refused to provide her with the necessaries and comforts of life and neglected and refused to aid her, or provide for the education and comfort of her daughter, or even permit her from her own ample means to provide for her own comfort and that of her child, whilst he was using money raised from the profits of the estate to enrich himself.

The petition then enumerates many circumstances connected with this general allegation, and proceeds to set forth her claims to her paraphernal estate and interest in the community of acqnests and gains. She claims one-third of the estate called

" Marengo," with a large number of slaves on it, together with the stock of horses, cattle and other animals, and all the plantation utensils. She also claims various other property and sums of money making altogether nearly $20,000.

The petition concludes by stating her feelings have become entirely alienated from her husband, that she has lost all respect for him, and repeating that their living together is entirely insupportable. She therefore prays to be authorized to institute this suit, that a domicil be assigned, an adequate alimony be allowed her, that an inventory and appraisement be made of all the movable and immovable property, that an injunction issue to restrain him from disposing of any part of the property; that there be a separation from bed and board decreed; and further that she be restored to the possession and administration of her separate estate and recover one-half of the community of acquests and gains, of which she asks a partition be made.

The various initiatory orders were made by the judge as prayed for, an injunction issued to restrain defendant from selling the property during the pendency of the suit, and the house of Mr. Debruys, in the parish of St. James, was assigned as the residence of plaintiff, an allowance of $200 per month was made for her support during the pendency of the suit, and an inventory and appraisement of all the property made in compliance with the prayer of the petition.

The defendant for answer pleads a general denial. He admits the marriage, but denies the plaintiff was a resident of Louisiana at the time or for a long time after, or that it was the intention of either to make their domicil in said State, and they did not remove into Concordia until the autumn of 1835. He says there is no justifiable cause for a separation from bed and board. He denies he has ever ill-treated the plaintiff or her daughter in any manner. He bears willing testimony to the many estimable qualities of the daughter, and also admits the plaintiff possesses many amiable qualities, but says from a constitutional defect of temperament, she will for very slight

causes or no causes at all, fly into the most extraordinary and uncontrollable paroxisms of passion, which he says has embittered his peace of mind, and to the same causes he attributes the separation of plaintiff from her first husband.  He says when she is excited she is abusive and commits acts that are unjustifiable and incompatible with the duties of a wife.  That he has used all the gentle means in his power to induce the plaintiff to control her violent temper, but without success.  That he has at all times endeavored to supply plaintiff and her daughter with all the necessaries and comforts of life, suitable to his situation and pecuniary means, and says the complaints of plaintiff are entirely unfounded.

The defendant admits the purchase of the Marengo estate on the 15th of June, 1835, for $137,500, which plantation with the slaves and stock then belonged to his wife, her brother and sister in equal portions, which was sold by order of the Court of Probates to effect a partition between the co-proprietors.  By which purchase he says he acquired title to said property, and became liable to pay the former owners the price stipulated, and he is the owner of all the property and its increase.  He says the community is burdened with many heavy debts, one-half of which plaintiff is liable to pay.  He denies he has squandered or improperly disposed of any of the community property, or that he has speculated or used the means in his hands for his exclusive use, but has in all matters acted for the common benefit.  He concludes by asking a rejection of the plaintiff's demand, but in the event of a judgment of separation, he prays to hold as his separate property the plantation called Marengo, with the slaves and their increase, and all the stock and agricultural implements, and that the community be finally settled and ascertained.

The separation from bed and board is claimed under the art. 138 of the La. Code, and the first section of the act relative to divorces, approved in 1827, p. 130, which says that married persons may reciprocally claim a divorce on account of excesses, cruel treatment or outrages of one of them towards the other,

if such excesses or ill-treatment be of such a nature as to ren-
der their living together insupportable.

A great deal of evidence was taken on the trial, which has
swelled the record to a large volume.    There was judgment
for the plaintiff decreeing a separation, restoring her to the
administration of her paraphernal property, and ordering a par-
tition of the community property, from which the defendant
has appealed.

The first question to which our attention has been called is  This court
the jurisdiction of this court.    The plaintiff denies its jurisdic-  will take juris-
diction of a suit
tion so far as concerns the question of separation from bed  for separation
from bed and
and board, as it does not present a question appreciable in mo-  board, although
the matter in
ney, and as the jurisdiction of this court is limited to civil cases  contestation is
not appreciable
in which the matter in dispute shall exceed the sum of three  in money, or
does not consist
hundred dollars, it is denied that it can take jurisdiction of the  in a money de-
mand exceed-
case or revise the judgment of the District Court.    The juris-  ing 300 dollars.
diction has been expressly given by the second section of the  The law ex-
pressly gives
act of 1827, and we are called on to declare this law unconsti-  the courts juris-
diction in cases
tutional.    If we had doubts upon the question, we should not  of separation
from bed and
act upon them, in a case where the will of the legislature has  board, and in
been so clearly expressed, but upon this question we have not  actions of di-
vorce ; and this
the slightest doubt of our jurisdiction.  court will not
hesitate to act
The counsel for the plaintiff relies much upon the decision  under it, when
they have not the
of this court in the case of Laverty vs. Duplessis, 3 Martin's  slightest doubt
of the constitu-
Rep., 42, in which it was held no appeal would lie from  tionality of the
law.
" proceedings upon a *habeas corpus*, and that this court had no
criminal jurisdiction, nor would it exercise a general superin-
tending authority over inferior tribunals."    We do not well see
how the disclaimers of authority in that case, which is not simi-
lar, can be brought to bear upon this, where the power is ex-
pressly given.    Whilst this court will not assume powers not
given by the constitution and the law, it will not rigidly restrict
its jurisdiction, and deprive a citizen by rigid rules and techni-
cal standards, of the right of coming before it, to claim his
rights or redress his wrongs.    We cannot believe it was the
purpose of the framers of the constitution to confine our juris-

diction in a question like this, to an examination of the results of a separation from bed, and board, and yet deprive us of the power of examining the cause. According to the doctrine of the plaintiff's counsel, we can revise the judgment of the court settling the principles upon which the community of acquests and gains is to be settled, but we cannot say whether the causes which dissolve that community are legal and sufficient. A man who claims a slave or animal, the value of which exceeds $300, can be heard in this court, but if a child is purloined from its parent no relief can be had from this court, according to this doctrine, because the affections and feelings of a parent cannot be valued in coin. If an action were brought to recover a child, it might perhaps be necessary to allege a loss of services, yet if it were an infant, we all know no value could de attached to its services; in this case the defendant says he does not wish to lose the services of an economical wife, and had it been required he could have made an affidavit they were worth more than $300, and thus given jurisdiction.

After having for more than a quarter of a century entertained jurisdiction of cases of this description without question, we are not disposed to abandon it upon the grounds assumed.

Upon affidavit made, and in consideration of its being the first term, a continuance should be allowed; but if on appeal it appears that by the admissions of the adverse party, &c., no injury is sustained by going to trial, the case will not be remanded on this account.

The next question is, in relation to the continuance asked for in the court below. Upon the affidavit made, and in consideration of its being the first term of the court, we think the cause should have been continued, and if it were not, that we are of opinion the judgment cannot under all the circumstances, be maintained in those parts to which the testimony sought was applicable, we should remand the cause for a new trial, but that is not necessary, as we view it at present. We have looked at the whole record in reference to this question, and find that by the admissions of the plaintiff as to what some of the absent witnesses would testify, and by the exertions of defendant in procuring the depositions or attendance of others, the case has been fully examined, and no injury has been sustained by the refusal to continue it.

Upon the main question of a separation from bed and board, we are of opinion the plaintiff has failed to sustain her action. In this court the case has not been argued upon the ground of any personal violence being offered to plaintiff, or that any abusive language has been used of or to her. The evidence completely negatives any such assertion, and we have given it a most attentive consideration. The remarks which the defendant may occasionally have made as to some of the accounts the plaintiff had created, or in relation to trifling articles used by her daughter, are not worthy of the importance that has been attached to them, and we find no evidence to sustain the allegation he ever attacked the character of the plaintiff's deceased father.

The impressions which the mass of testimony taken in the cause have made on our minds are, that the plaintiff is a woman of a nervous and very irritable temperament; easily excited and incapable or unwilling from long indulgence to exercise any control over her passions when aroused. This seems to be the opinion of those who have known her long and intimately, and when she left the matrimonial domicil or shortly before, she appears to have been highly excited from various causes, and a physician who testified on the trial, says he thought "it was a mental derangement." That the warmth of her temperament is constitutional or of long standing is evident from the statement of one of the witnesses, who says she saw her throw a silver slop bowl at the head of her first husband, who however acknowledged on his death-bed he had done her much injustice. The defendant is represented as a man of respectable character and intelligence, on all occasions he appears to have treated the plaintiff with respect and kindness, when she was excited, he either endeavored to pacify her, was silent, or left the house, and more than one witness deposes, that plaintiff has said, that no matter how abusive she was to him, he never would say any thing unkind to her. When the final separation took place, though both parties were then highly excited, it appears from the testi

mony of plaintiff's sister, that the defendant used no un-gentlemanly expression in the conversation that took place. The presiding judge of this court in the case of Fleytas vs. Pineguy; 9 La. Rep. 419; said, "husbands are men, not angels;" and the evidence in this case induces us to doubt, if all of the other sex are entitled to claim the attributes of angels.

The principal reliance of the plaintiff in this court has been, that the defendant has not supplied her and her daughter with the necessaries and comforts of life, in a style suitable to the fortune she brought into marriage, and that which the parties now possess. As to what are comforts and necessaries, there may be various opinions, and it is not easy to define them. But we can from the evidence, safely express our belief that a large majority of the wives in the country are not as well supplied with the comforts and necessaries of life as the plaintiff seems to have been. Several witnesses say, she and her daughter had not a sufficiency of clothing, the house in which they lived was not as good or as well furnished as it should be, the carriage was old, and she had not a sufficient supply of money to spend, although she was a very economical lady. When we come to examine the particulars, we find that the plaintiff and daughter were not altogether deprived of what was necessary and comfortable, but they were not supplied in that style which suited the taste of some of plaintiff's friends. It appears from the complaints of plaintiff to a few of her intimate associates, the defendant did not give her as much money as she thought she had use for, and neglected or delayed payment of some of her bills, and of his own debts. It is not shown how much money he gave her, or that he unreasonably refused it when he had it, but it is shown she had a general credit in Natchez, which from the accounts in the record seems to have been freely used, she and her daughter always appeared well dressed; and it is shown that defendant finally made an allowance of $600 per annum to plaintiff and her daughter, to supply their wardrobes alone, which the former insisted should be increased to one thousand dollars.

WESTERN DIS.
October, 1841.

ROWLEY
vs.
ROWLEY.

That some one or two of the bills of plaintiff were not promptly paid appears to be true, and that some of defendant's own debts were not paid is equally true, but that is not a legal cause for a separation from bed and board; if it were, we fear the dockets of our courts would show a much larger number of suits like this, than they happily do.

From the testimony, it appears the defendant is an enterprising and industrious man, prospering by a system of prudence and rigid economy, more commendable in his situation, than a course of extravagance. He appears to have contracted some very large debts, and remembers it is a duty to be just, before he is generous even to his own household.

Towards the plaintiff's daughter, the defendant appears to have conducted himself with kindness and general attention. We see nothing to censure in the manner he has treated her. That the expenses of her education are not all paid, is not a reason that can sustain this suit.

The doctrine laid down in the case of Tourné vs. Tourné; 9 La. Rep. 452; in relation to excesses, cruel treatment and outrages, has been pressed on us in this, but we are unable to apply it, as the facts will not sustain us in so doing. It is said, it is impossible for the parties to live together again after what has occurred, and we had as well affirm the judgment of separation. The same arguments were advanced in the case cited, and in that of Fleytas vs. Pineguy, without effect. We cannot admit their force now, and do not despair of seeing reason and a proper sense of what is due to propriety, resume their supremacy, and yet hope the plaintiff will return to the matrimonial domicil, and again resume the position she has occupied in society, the affections of her husband, and the estimation of her friends.

Our judgment upon this part of the case makes it unnecessary to say any thing in relation to the property in community between the parties, of which the defendant will retain the control as provided by law, further than as it may be connected with other questions.

*Living unhappily together; having frequent differences, ebulitions and displays of temper, but without any personal or other violence; the want of supplies or necessaries according to the wife's demands; the non-payment of her bills promptly, and education of her daughter; the want of support according to her rank and fortune she brought to the marriage, and supposed impossibility of the parties ever living together again, are not sufficient cause of separation from bed and board.*

It is alleged and proved beyond question, that the plaintiff brought into marriage a large paraphernal estate, of which the defendant has had the administration; she now claims the restitution of it. To this she is clearly entitled. La. C. arts, 2360, 2361, 2364, 2368; 8 Martin N, S. 229; 10 La. Rep. 136; 3 Martin N. S, 612. But to ascertain of what that paraphernal estate is composed, is a question of more difficulty.

The plaintiff claims one third of the plantation called Marengo, situated in the parish of Concordia, with all the slaves on it on the 15th of June, 1835; the stock of horses, cattle and all other animals with the plantation, utensils, &c.; also one third of the slaves born since that date, and a considerable sum of money received, which belonged to her.

We will first consider plaintiff's rights to the one third of the Marengo property. The defendant contends the whole belongs to the community, and if plaintiff is entitled to any thing, it is only the price at which he purchased it. To understand this question and some others that arise in this case, it is necessary to state how this property was acquired.

This estate was the property of plaintiff's father, James Kemp, who died, leaving six heirs to inherit it. In 1831, this property was sold at a Probate sale and purchased by three of the heirs, to wit: Jane Girault, now the plaintiff, her sister Mrs. Frances E. Sprague, and their brother, James Kemp, for the sum of $70,100; payable at different terms, and the price secured by a mortgage on the property. The portion of each heir was $11,683 33. The portion of the two minors bore interest at 8 per cent. from the 31st of December, 1831. For which notes were given by the purchasers.

Sometime after this, D. B. Kemp, one of the minor heirs died, and his five brothers and sisters inherited his portion, which, on the 15th of June, 1835, amounted with the interest to $14,915 71, and the portion of each heir to $2,983 14. On the last mentioned day, the whole property was again sold by the Probate Judge, under a judgment of that court, for the purpose of effecting a partition among the co-proprietors, one

of whom, James Kemp, had also died, leaving two minor children. The terms of this sale were two thirds in cash, and the other third coming to the minors in five equal annual instalments with 10 per cent. per annum interest until paid. Upon these terms the defendant purchased the Marengo estate with seventy-six slaves, and all the stock and plantation, utensils, for $112,500; he also agreed, to pay the above mortgage of $14,915 71, in favor of D. B. Kemp's heirs, also two mortgages of $4,000 each, given by plaintiff and her sister, Mrs. Sprague, and some other sums, making the sum of $137,500.

This sale, the defendant contends, divests the plaintiff of all her title to the one third of the property she owned, and vests it in the community, it being liable to her for the price only. The plaintiff contends that by this sale she is not divested, as her husband could not purchase her property, all sales between husband and wife, unless in special cases, being prohibited.

Before proceeding to notice this question, we will dispose of one, which although not very material, at this time is one much relied on by defendant, as affecting this question. It is, that as there was no community existing between plaintiff ahd defendant previous to this sale, they not being residents of this State until then, the whole estate not only became community property, but that defendant is only bound to account to plaintiff for one half of the price, and not for that until the community is dissolved. To this we cannot give our assent. It appears to us it is shown, the plaintiff always had her legal domicil in this State, and the fact of her marrying in another State, where she was temporarily residing, does not deprive her of her legal rights and control over her property. Admitting all that was said about going to Illinois to be true, the parties never went there, and mere words cannot control acts and conduct so palpable in their consequences as are exhibited in this case. It is stated by one witness, that when plaintiff expressed a wish to reside in Illinois, the defendant said he

Where a woman has her domicil here, and marries in another State, it does not prevent a community of acquests and gains from existing, when the parties afterwards remove to Louisiana.

.WESTERN DIS
October, 1841.

ROWLEY
vs.
ROWLEY.

In a judicial sale for a partition among several heirs, the husband of one of them may purchase the entire property sold, which becomes community property from that time; he being responsible to the wife for the price only.

would not consent to it, as the laws of Louisiana afforded pro-. tection to the property of married women. This question must therefore be considered in reference to our laws.

That the title to the whole estate called Marengo, with the slaves and Stock thereon, on the 15th of June, 1835, was by the sale and purchase then made, vested in the defendant, and therefore community property, we have no doubt. The proceedings which were had previous to this sale, were for the purpose of effecting a partition of the joint estate ; they were provoked by Mrs. Sprague and her husband, the plaintiff and defendant both being defendants, and a special allegation without denial, that they are residents of Concordia. The sale was a forced and judicial one, for the purposes of partition, and at such a sale we think a husband may be a purchaser, and by it vest all the interest of the wife in the community, it being responsible to her for the price only. This view of the case is, we think sustained by the La. Code arts. 1263, 1265, 1304, 2341, and 1 Martin N. S. 463 ; 12 La. Rep. 172 ; 17 Idem 296.

The articles of the Code which prohibit sales of property between husband and wife, relate to those which are not judicial in their character, and in some of them, the husband could not purchase, until a recent act of the legislature, in consequence of the peculiar relation in which he or his wife stood towards the estate. But we see nothing in the law to prevent a husband from purchasing at a probate sale of the succession, to which his wife is an heir, a portion or the whole of the property, composing it, and holding as if such property were purchased from any one else. If he afterwards receives her share in the succession, he is responsible for it to her, as her paraphernal estate. If the executor or administrator should call on the husband to pay the price of property so purchased, we do not see how he could oppose as compensation the interest which the wife has in the succession, without her consent. But should the portion of the wife be imputed to the extinguishment of the price to be paid by the husband,

Where, in a purchase by the husband, the portion of the wife in the estate sold is imputed to the extinguishment of the price to be paid by him, he is bound to her for it, with a legal mortgage to secure it, if he administers her paraphernal estate.

'then he is unquestionably bound to her for it, and she is entitled

to a general mortgage to secure her interests, if her husband administers the paraphernal estate.

The dower of the wife may be sold for particular purposes, such as paying debts she owed at a certain period, previous to the marriage contract, and we know of no good reason, why the husband cannot purchase at such a sale ; yet the law imposes more restrictions on the sale of dotal than paraphernal property.

It has been urged on us with much zeal, the interests of the husband and wife should never be opposed to each other, and the former be placed in a situation, where it would be his interest to purchase the property of the latter, for less than its value. There is force in the argument, and it should not be done, whenever it can be avoided ; but as long as husband and wife are considered as partners merely, cases must sometimes arise, wherein their interests will be in real or seeming opposition, and it is then generally best, to act upon the principle, that the husband will be more disposed to protect the interests of his wife, than that he will be to defraud her. In sales made for a partition, the interests of the co-proprietors will in general be a strong guarantee and protection to the interests of the wife, where the husband purchases the whole estate, and in cases where there are no co-proprietors, or where there is, it is better the husband should stand in a position, where he can protect the interests of his wife, although he may possibly abuse the trust, than that he should be bound to stand by. powerless, and see her interests subjected to the combinations or cupidity of strangers.

These views of the case are most favorable to the interests of the wife, because she not only gets the price the property may sell for at auction, but the property then goes to enrich the communiiy in which she is a partner. As to the community generally, we think this the most beneficial interpretation we can give the law, as it relieves the property of the citizen from some of the burdens that encumber its alienation.

WESTERN DIS.
October, 1841.

ROWLEY
vs.
ROWLEY.

The defendant must therefore account to the plaintiff for one-third of the price, for which the plantation and slaves sold. But what that sum is, seems to be a contested question. The plantation was bid off for $112,500, " *subject to the payment of the mortgages specified*."

One of the mortgages specified was in favor of D. B. Kemp's heirs for $11,683 33, with 8 per cent. interest, from the 31st of December, 1831. The defendant contends, that as the plaintiff was a debtor for one-third of that sum, and afterwards became an heir for one-fifth, as to her there was an extinguishment of the mortgage by confusion; and he is not bound to pay her the fifth of D. B. Kemp's mortgage. If this were to be permitted, the defendant would benefit by the inheritance from David. B. Kemp, and not the plaintiff, who was the real heir. Whether correctly or not, this mortgage was supposed by all parties to exist at the time of the sale in 1835, and it formed a part of the price defendant was to give for the property. If it had not existed, he would have been obliged to have paid that much more for the land, for we do not understand that the mortgages were to be paid out of the $112,500, but over and above that sum.

The mortgage in favor of D. B. Kemp's heirs, principal and interest, amounted at the time of the sale to $14,915 71, of which the portion of the plaintiff was $2,983 14, for which the defendant must account to her.

The plaintiff further claims the sum of $3,176 36, which she says the defendant received from her sister, Mrs. Sprague, for her. Mrs. S. was also one of the heirs of David B. Kemp, and this sum was the amount of her portion with interest at the time it was paid. She acknowledged the receipt of it in an authentic act, and releases the mortgage on the Marengo property. The plaintiff says, that although in the act Mrs. Sprague says she received this sum in cash, it was in fact settled by imputing it to a debt, which Mrs. Sprague's deceased husband was owing plaintiff, and her property was therefore used by defendant to pay a community debt. The defendant

was interrogated on oath as to this transaction. To a portion of the interrogatories he objected and refused to answer, and to the portion he did answer, he responded so vaguely, that we are constrained to believe his purpose was to evade an answer; the interrogatories must therefore be taken as confessed. If the defendant had have paid Mrs. Sprague in cash, as the act says he did, nothing could have been easier, than for him to say so; and we cannot see, how it would have committed him to any third person. He must therefore account for the sum claimed, as we think it is sufficiently shown, he used a debt owing to plaintiff, to pay a debt of the community. This opinion is based entirely on the answers which the defendant gave to portions of the interrogatories and the effect of his refusal to answer the remaining portions of them. It therefore becomes unnecessary to express any opinion upon the bill of exception taken to the testimony of Mrs. Sprague on this part of the case.

The plaintiff further claims the sum of $2000, the amount of a draft drawn by both plaintiff and defendant, on Sturges Sprague, of Natchez, who was plaintiff's agent in the management of her affairs, previous to and sometime subsequent to her marriage with defendant. This draft was drawn sometime after the marriage of the parties, in 1834, in the State of New York. It is shown, neither of the parties had money at the time to enable them to return to Louisiana, and this mode was adopted to raise the means. It is admitted, the defendant at the time had no funds in the hands of Sprague, to whom he was a stranger. The draft was paid by Sprague, and was in plaintiff's possession at the time of the trial, which creates a presumption, she had paid it. It was at any rate enough to throw the burden of proof on defendant, to show he had paid it, or had funds in Sprague's hands; 13 La. Rep., 13, 367. This he has not done, although he has had an opportunity of discharging himself by answers to interrogatories propounded to him. For this sum he must also account.

The next claim is for the proceeds of the sale of a slave

which belonged to plaintiff previous to her marriage, who seems to have been a house servant or personal attendant. When the plaintiff left for New York in 1833, she left this slave with her sister in Natchez, where the slave remained until her return after her marriage. Sometime after their return, defendant sold this slave for $800. It is proved, the slave was on the Marengo plantation with plaintiff previous to her marriage, and there is no doubt, she once belonged to her. The defendant says, that as the slave was in Mississippi, where property of that description is considered personal, and as there was then no community of property existing between him and his wife, the title of this slave was vested in him by the marriage. We have heretofore expressed an opinion as to the time the community commenced, and we do not think, that because the parties and the slave were temporarily in Mississippi, that the right of property sanctioned by the laws of this State, was changed. The admission of such a doctrine would change the character of the title to slave property in every State, through which a person might pass, attended by one of his domestics. The defendant must therefore account for this sum.

The next sum claimed is $375, which was received on a check given to plaintiff in her own name, by Sturges Sprague, her former agent. It is dated January 12, 1835, a short time after the parties arrived at Natchez or Concordia. The defendant in his answer to interrogatories, says, he thinks he received the money, but he adds, he " believes it was received for plaintiff, and expended by her, or specially for her individual benefit." As the admission of the receipt of the money is not definite, and there is a probability of it being used by plaintiff, we do not think she ought to recover it.

The last demand is for the sum of $90, received by defendant for some cattle, that were sold, which belonged to plaintiff. This sum appears to be proved.

From these sums the defendant is entitled to have deducted the sum of two hundred dollars, advanced to the plaintiff previous to their marriage, and he is also entitled to a further deduction, for the share of the wife in the marriage charges, from the date of the marriage in April, 1834, to June 15, 1835, a period of fourteen months, during all which time the daughter of plaintiff was being educated at Troy, in New York. The article 2366 of the Code says, if all the property of the wife be paraphernal, and she have reserved to herself the administration of it, she ought to bear a proportion of the marriage charges, equal, if need be, to one half her income, and in case of separation of property, she must contribute in proportion to her fortune, and to that of her husband, both to the household expenses and to those of the education of the children, but if nothing remains to the husband, she is bound to pay all those expenses alone; La. Code, art. 2409. It is very satisfactorily shown, that from the time of the marriage to the purchase of the Marengo estate, the defendant had very little or no property, whilst the plaintiff had a large property, which was administered by her; she is therefore bound to contribute at least one half to the matrimonial charges, which we think a full compensation for the amount of the draft drawn by them on S. Sprague, and the price of the slave Dinah, sold as before stated.

*If the wife have a fortune, and is in the administration of it, and the husband little or none, she is bound to pay or contribute at least half of the matrimonial charges.*

The defendant, as we infer from the statements presented and the arguments of his counsel, also claims a credit for $4000 and interest paid by him, it being a separate debt of the plaintiff, secured by a mortgage on the Marengo plantation and slaves. This we think he is not entitled to, as by the terms of the sale he was to pay the mortgages mentioned in it as a part of the price.

The amount of the plaintiff's paraphernal claims which are allowed, consist of:

One-third of the sum of $112,500, the sum for which the plantation called Marengo, with all the slaves and stock sold on the 15th of June, 1835, $37,500 00

The sum received from Mrs. F. E. Sprague,........ 3,176 00

The portion inherited from D. B. Kemp,............ 2,983 14

The draft on Sturges Sprague drawn by plaintiff and defendant,................................ 2,000 00

The price of the slave Dinah sold,.................. 800 00

Amount received for cattle sold,................ ........ 90 00

$46,549 14

DEDUCT.

Plaintiff's proportion of the matrimonial charges from the time of the marriage to June 15th, 1835, ...............................$2,800 00

Advances by defendant to plaintiff previous to the marriage,................ 200 00

3,000 00

Amount of plaintiff's paraphernal estate,.........$43,549 14

For the sum of $2983 14, we think the plaintiff has a special mortgage on the plantation called Marengo, and all the slaves and stock sold on the 15th of June, 1835, having inherited it from David B. Kemp; for the remainder of her claim amounting to the sum of forty thousand five hundred and sixty-six dollars, she has a legal mortgage on all the property of her husband, the defendant; for the sum of $37,390, part thereof, to take effect from the 15th of June, in the year 1835, and for the sum of $3761, the other part thereof, a like legal mortgage to take effect from the 15th day of October, 1839, it being the date said sum was received from Mrs. F. E. Sprague.

We do not think the plaintiff is entitled to recover any interest on the amount allowed her, previous to the rendition of the judgment in the District Court. By article 2363 of the Code all the fruits of the paraphernal property, with the exception perhaps of the young of slaves, belong to the community, when the husband administers the property, or when it is

*The wife is not entitled to interest on recovering her paraphernal property, when the husband administers it, or when it is administered indifferently by the husband and wife; as the fruits of paraphernal property, except the young of slaves belong to the community.*

administered indifferently by the husband and wife. In this case, there exists a community, and the paraphernal estate appears always to have been administered by the defendant, or by him and the plaintiff indifferently; the disposition of the profits is therefore regulated by the article of the Code above cited.

When this action was commenced, the District Judge assigned the plaintiff a domicil at the house of Mr. Debruys in the parish of St. James, and allowed an alimony of $200 per month, for the support of herself and her daughter. This allowance the defendant never paid her, and during the pendency of the case in the District Court, a rule was taken on him to show cause why an execution should not issue, to enforce the payment of it. She also took a second rule on him, to show cause why the domicil should not be changed from the parish of St. James, to the house of a person residing in the parish of Concordia. To the first rule the defendant showed for cause, that the allowance was excessive, that plaintiff had the use of one or more servants, which she was not entitled to, and that she had left the domicil assigned her without the assent of the judge or the defendant. To the second rule he answered, the court had no right to change the domicil first assigned plaintiff, without his (defendant's) assent, and that he peremptorily refused to give.

As to the first question, we do not think the allowance under the circumstances of the case is excessive. The plaintiff had a large property previous to her marriage; the defendant has had the benefit of it, and retains possession of upwards of $43,000, without interest, up to the time of the judgment. By an agreement between the parties, which is of no validity, he had engaged to pay her the highest rate of conventional interest on about $41,000, which he has never paid, he therefore complains with a bad grace of the sum allowed for alimony.

As to the second question, we think the plaintiff has not lost her right to alimony by leaving the domicil assigned her. It is in evidence, she left it once and went to New Orleans to con-

sult with her counsel in relation to her business, in consequence of having some papers served on her by the sheriff of the parish of St. James, which she supposed it was necessary to communicate to her counsel. She left on Friday and returned the Sunday following. The other instance in which she left the domicil, was about a week or ten days previous to the commencement of the court, at which she expected this suit would be tried, and it is in evidence, it was necessary she should be in a convenient situation to consult with her counsel and communicate information to them. We think the reasons very sufficient, to authorize the plaintiff to leave the domicil assigned her. We do not understand the law to mean, the wife must never quit the house assigned as her residence. It never intended she should be imprisoned and not go out without the leave of the husband or the judge. If she leaves the assigned residence for necessary purposes, and only for a reasonable period, she loses none of her rights by so doing. We think a correct view of this question was taken in the case of Le Beau vs. Trudeau, 1 Martin, N. S., 93.

*During the pendency of a suit of the wife for a separation from bed and board, the wife may leave the home assigned as her residence on business, and be temporarily absent.*

The district judge deducted from the amount of the alimony due on the 20th of June, 1841, the services of a slave which the plaintiff had in her service, and ordered an execution to issue for the remainder. In so doing we think he decided correctly, and the judgment on the rule must be affirmed with costs.

But it is contended if no judgment of separation is given, there can be no judgment for alimony. We think differently, and the case in the 1 Martin, N. S., 93, is directly in point.

*A judgment for alimony may be given, even when no separation from bed and board follows.*

As to the second rule to show cause, we do not think the court erred in changing the residence of the plaintiff. The mere will of the defendant is not a sufficient reason to prevent the court from acting; and we think it a sufficient reason that she wished to be in the parish where she had long resided, where her friends are, and the property in which she is interested is situated.

*The court may in its discretion, change the residence of the wife during the pendency of her suit for separation.*

The judgment of the District Court is therefore annulled,

WESTERN DIS.
October, 1841.

ROWLEY
vs.
ROWLEY.

avoided and reversed, and this court proceeding to give such judgment as in their opinion ought to have been given in the court below, do order, adjudge and decree, that so much of the plaintiff's demand as relates to a separation from bed and board, and a dissolution, settlement and partition of the community of acquests and gains existing between the said plaintiff and defendant, be finally rejected and dismissed. And it is further ordered, adjudged and decreed, that the plaintiff, Jane Rowley, be restored to the administration of her paraphernal estate, separate from and without the assistance or interference of her aforesaid husband, Charles N. Rowley, and that she recover of and have judgment against him, said Rowley, for the sum of forty-three thousand five hundred and forty-nine dollars and fourteen cents, with interest thereon at the rate of five per centum per annum from the third day of July in the year 1841, until paid, which is the amount of her paraphernal property received by her aforesaid husband, to secure the payment of said sum, with the interest thereon; she has a special mortgage on all that plantation called Marengo, situated in the parish of Concordia, together with all the stock of horses and cattle of every description, with the agricultural implements thereon and seventy-six slaves named and described in the sale thereof on the 15th day of June in the year 1835, for the sum of two thousand nine hundred and eighty-three dollars and fourteen cents, ($2983 14,) part of the aforesaid sum, to take effect from the date last aforesaid; and for the sum of thirty-seven thousand three hundred and ninety dollars, ($37,390) another part of the aforesaid sum, she is decreed to have a legal mortgage on all the property of the said Charles N. Rowley for reimbursing the same, to take effect from the last aforesaid date ; and a like legal mortgage as the last mentioned, for the sum of three thousand seven hundred and sixty-one dollars to take effect from the 15th day of the month of October, in the year 1839: the costs in the District Court to be paid by the defendant and appellant, those of the appeal by the plaintiff and appellee.