## HENRIETTA TROWBRIDGE *v.* C. T. CARLIN.

In cross actions brought by husband and wife for a separation from bed and board it was *held :*
That where the faults of the parties are nearly balanced, and are of a similar nature, neither party can be heard to complain in a court of justice

Under the law of Louisiana, as hitherto interpreted, disappointments in the marriage relation, and mere incompatibility of temper, are not causes for a judicial separation between husband and wife—excesses, outrages and cruel treatment of a nature to render the conjugal life intolerable, are ; but with the qualification, that the party complaining must be comparatively innocent. Mutual insults and outrages, the fruit of mutual provocations, unless there be a great and palpable disproportion of guilt, as between the parties, furnish no sufficient ground of action to either.

APPEAL from the District Court of the Parish of St. Mary, *A. Voorhies*, J. *J. G. Olivier* and *H. Gibbon*, for plaintiff. *Tucker & Wilson*, for defendant, appellant.

COLE, J. The parties to these suits have applied in separate actions for a separation from bed and board.

The suits were consolidated by consent of counsel and tried together.

The wife has appealed from the decree of the District Court, which grants the judgment of separation in favor of the husband and entrusts him with the keeping of the children.

The principal causes adduced by the husband for his right to a separation are, that his wife desired to interfere with his prerogative of ruling on the plantation, and of administering its affairs ; was dissatisfied when he left home to attend to his plantation, and also, that she used very improper language towards him in presence of the overseer.

It appears from the evidence, that jealousy must have been the cause of the whole of the improper conduct of the wife ; the husband seems to have sup-

ported her ebullitions of temper for a long time, until becoming wearied, he endeavored to correct her temper by corporeal punishment.

This was antagonistical to that protection which is due to the wife, but *Mr. Carlin* appears to have been goaded on to it by the continued provocation of his spouse.

The evidence establishes, that the character of the husband is generally mild and amiable; the witnesses of the wife also declare that she is an amiable and refined lady.

As both parties have acted unkindly to one another, a separation ought not to be granted to either. 9 M., O. S., 421, *Fleytas* v. *Pigneguy.*

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed, and that the petitions in these consolidated cases be dismissed, and that appellee pay the costs of both courts.

SPOFFORD, J., concurring. If all the evidence which soils this record is to be credited, it proves great misconduct on the part of both spouses, in the mutual relation which both are trying to dissolve. Crimination and recrimination, blows, and words harder than blows, have succeeded their marriage vows of reciprocal forbearance, fidelity and love.

A little more than ten years ago the appellee, then an elderly man with a fortune, married the appellant, a young girl without one.

The first that we hear of them is, that they arrived upon the husband's plantation in the parish of St. Mary, "looking cross" at each other. Bickerings soon arose about the management of the household; favorite servants of the master were found disrespectful to their mistress, and had to be chastised or sold. The lady had misunderstandings with the overseers, and they left. Abusive language, revolting to the ear of decency, is said by one of the overseers to have been uttered, in his presence, to the husband by the wife, apparently under the stings of jealously. Two ladies testify that, in their presence, the husband upbraided his wife with being "of no account," saying "that she did not suit him, and that he was sorry he had ever married her." One of them deposes, that he also traduced her family; and both say that, to these reproaches, she answered meekly, and with tears. Notwithstanding occasional outbreaks and altercations of this sort, relieved, it would seem, by some placid intervals, time went on and three children were born of the marriage. Although each parent is proven to have been tenderly devoted to the children, these new ties do not appear to have drawn them closer to each other. Indeed, the displays of temper on both sides seem rather to have increased in intensity, and it is admitted that, on one occasion at least, the father resorted to violence to correct the mother of his children.

About a year before the present suits were brought, and nearly nine years after the marriage, the husband instituted an action for separation of bed and board against his wife; but one of his overseers testifies, that he was persuaded to abandon it by her tears and promises of amendment. It was abandoned shortly after its institution.

At length, the present cross-actions were brought on the same day, in which each spouse, after a glowing recital of grievances suffered, and a careful suppression of grievances inflicted, claimed a judgment of separation against the other with a right to the custody of the three children, which each party seems very solicitous to retain.

TROWBRIDGE
v.
CARLIN.

The District Judge, expressing no doubt as to the truth of any of the testimony, concluded that the husband was the aggrieved party, and gave him a judgment of separation with the custody of the children.

The wife has appealed.

Although the conduct of both parties appears to have been highly censurable, it is impossible to say from the record before us, which was first or most in fault. Their errors were of a kindred character, ebullitions of temper springing from disappointment, a spirit of retaliation, and a lack of self-control.

In a case like this, where the faults of the parties are so nearly balanced, and are of so similar a nature, the serious question arises, can either be heard in a court of justice to complain of the other? Should not the conduct of each toward the other close the mouths of both?

An affirmative answer to this question was given by one of the sages of the Roman law, treating, however, of the pecuniary interests of the spouses only:

"Papinianus lib. XI. Quastionum viro atque uxore mores invicem accusantibus, causam repudii dedisse utrumque pronuntiatum est. Id ita accipi debet, ut eâ lege, quam ambo contempserunt, neuter vindicetur : paria enim delicta mutuâ pensatione dissolvuntur." Dig. Lib. XXIV, Tit. III, 1. 39.

The common law adopted this principle of compensation in refusing divorce where the parties were guilty of similar faults towards each other. Const. 32, Q. VI. can. I. Coquille and Domat seems to have recognized something like this rule as a part of the ancient French law.

Under the Code Napoleon, two schools sprung up and divided upon this question. Duranton (T. II, No. 574), Valette and Massol hold that a demand for separation is barred on either side by mutual faults of the same description ; in the words of M. Duranton, "la réciprocité des torts doit aussi, en général, produire une fin de non-recevoir, surtout lorqu'ils sont de même nature." On the other side, among those holding that where both parties are guilty of mutual outrages, both should have a decree of separation, must be classed the great names of Toullier (II, 764), Marcadé (I, 769), M. Demolombe (IV, 415), and probably the weight both of doctrinal and judicial authority in the modern jurisprudence of France.

The District Judge cited only the opinion of Toullier. But, it must be remembered, that this is a question of Louisiana law. Our Code, our jurisprudence, and our manners differ in many respects from those of France, although to a considerable extent, derived from that source.

The doctrine of the common law and of Duranton, on the point under consideration, appears to have been adopted at a very early period, and frequently enforced by our predecessors. In *Durand* v. *Her Husband*, 4 Martin, O. S., 174, it was held : that "the law which provides for a separation from bed and board in certain cases is made for the relief of the oppressed party, not for interfering in quarrels where both parties commit reciprocal excesses and outrages."

In *Pigneguy's* case, 9 Lou., 420, the wife's claim for a separation was rejected, although it was proved that her husband had used personal violence towards her on one occasion, the court remarking that the evidence gave color to the assertion, that she provoked the ill treatment by her violent temper.

In *Rowley's* case, 19 Lou., 571, the court said, the argument, that after what had occurred between the parties it would be impossible for them to live together, was not a justification for a decree of separation.

In *Lallande* v. *Jore*, 5 An., 33, judgment of separation obtained by a wife <span style="float:right">Trowbridge<br>*v.*<br>Carlin.</span> for defamation by her husband was reversed, because the conduct of the wife had been marked by exasperation and violence towards her husband. *Durand's* case was cited with approbation, and also *Waring's* case, 2 Phil., 132, where it was said by an English court, that if the conduct of the party complaining has been outrageous, the remedy must be first sought in a reformation of conduct by the complainant.

And in *Naulet* v. *Her Husband*, 6 An., 403, where, as in this case, both parties demanded a separation, and the District Court granted it in favor of the husband, the judgment was reversed and both parties were turned out of court, because they were both in the wrong, having been guilty of reciprocal outrages.

To ascertain what is a just limitation upon the right of divorce, is one of the most difficult of social problems.

To fix this limitation is an attribute of sovereignty.

Under the law of Louisiana, as hitherto .interpreted, disappointment in the marriage relation, and mere incompatibility of temper, are not causes for a judicial separation between husband and wife — excesses, outrages and cruel treatment of a nature to render the conjugal life intolerable, are; but, with this qualification, that the party complaining must be comparatively innocent of conduct similar to that complained of, in order to obtain a decree ; mutual insults and outrages, the fruit of mutual provocations, unless there be a great and palpable disproportion of guilt as between the parties, furnish no sufficient ground of action to either.

This being the doctrine of the cases heretofore adjudged in this State, we would not feel at liberty to disturb it, although it might conflict with our views of policy ; but, notwithstanding the vigorous and able assaults that have recently been made upon this rule in France, and notwithstanding the inconveniences it may occasionally work, its manifest tendendency is to induce greater circumspection in entering upon the most important of civil contracts, greater forbearance in undergoing the petty annoyances of domestic life, and a more general suppression of such scandalous scenes as it has been our painful duty to review in this cause.

I therefore concur in the above decree, dismissing both actions at the appellee's costs.