(74 South. 181)

No. 22155.

VEAL v. VEAL.

(Feb. 12, 1917.)

*(Syllabus by the Court.)*

DIVORCE &#8884;27(1, 2)—SEPARATION FROM BED AND BOARD — CRUEL TREATMENT — SINGLE INSTANCE.

There is no unqualified rule in the jurisprudence of Louisiana that only one instance of cruel treatment of the wife by the husband is not a sufficient cause for her to obtain a decree of separation from bed and board. Her right to the decree on that ground depends upon whether the cruel treatment was of such a nature as to render her living with her husband intolerable or insupportable. In the determination of that question the court will consider not only the nature and extent of the cruel treatment, but the character and mode of living of the wife and whether there was provocation for the ill treatment.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 62, 63, 76, 81, 82.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Mrs. Rose J. Veal against Garland H. Veal. From judgment denying a decree of separation from bed and board, plaintiff appeals. Judgment annulled and reversed, and decreed that plaintiff be granted separation from bed and board.

Solomon Wolff, of New Orleans, for appellant. Edgar M. Cahn, of New Orleans, for appellee.

O'NIELL, J. The plaintiff has appealed from a judgment denying her a decree of separation from bed and board.

Her demand is based upon the allegation that her husband defamed her and was guilty of such outrages and cruel treatment of her as to render their living together insupportable.

She alleged in her petition that during the nine years of their married life she had conducted herself properly, had done everything in her power to make the home comfortable and happy, and had not given her husband any cause or provocation for ill treatment. In a supplemental petition she referred particularly to an occurrence on the 24th of July, 1914, when, as she alleged, the defendant abused and struck her.

In his answer the defendant denied that he had ever struck or abused the plaintiff or had been guilty of any outrages or cruel treatment towards her; and he denied her allegations that she had always conducted herself properly, had done everything in her power to make the home comfortable and happy, and had not given him cause or provocation for ill treatment.

The case was tried before the passage of the Act No. 157 of 1916, permitting the husband and wife to testify for or against one another; hence we have not the testimony of either of them.

The only witness to the quarrel on the 24th of July, 1914, was the plaintiff's sister, Miss Marie Tatum, who resided in the home

of Mr. and Mrs. Veal. She testified that she was there when they returned home quarreling, at about 6:30 that afternoon. When the witness opened the door for them, she heard the plaintiff say to her husband:

"I don't think I will ever speak to you again, because I never get a kind word from you."

Thereafter the plaintiff went on the porch where her husband was and asked him to come in to dinner. He remained on the porch, and, when the plaintiff went out again and asked him to dinner, he cursed her. When the witness and the plaintiff had dined and cleared off the table, Mr. Veal came in and told his wife he was going out that night. The witness also had an engagement to go out that night. Being afraid or unwilling to remain alone in the house, the plaintiff said to her husband:

"Garland, I am going up to see some friends, because you said you wouldn't be here, and I can't be left alone in the house."

He cursed her and replied that he presumed she was going out with some man. To which she replied:

"No; you can accuse me of anything else, but not of anything of that kind. From now on you get your lawyer and I will get mine."

She went upstairs very nervous and excited, where her husband followed her and the quarrel continued. Again cursing her, and saying he would end it all, he grabbed his wife by the throat and threw her into the corner of the room. The witness took hold of him and pulled him off of his wife. Continuing his cursing he left the room, and the witness immediately locked the door. He tried to re-enter the room, and the witness screamed "Murder!" The plaintiff had fallen back into a chair, exhausted from the violence inflicted upon her. The witness then went to the window and called to a woman living next door to come to her assistance. The neighbor came immediately, and Mr. Veal then left the house. The plaintiff remained in the same

house with Mr. Veal six days after that occurrence, but there was no reconciliation between them.

The neighbor who was called to the assistance of the plaintiff by Miss Tatum corroborated the latter's testimony. She said she heard a terrible scream, and her children asked her what it was. She said she thought it was some bad boys in the street. Then she heard her name called; and, going to the window, she recognized the voice of Miss Tatum, appealing to her to "please come over." Responding to the call, she met Mr. Veal as he was leaving the house, and asked if his wife was sick. He invited her in, telling her that the ladies were upstairs, and he immediately left.

The only testimony offered to contradict that of Miss Tatum and of the neighbor who responded to her call was that of another neighbor, who testified that he was at his home on the night of the occurrence in question, and did not hear the screaming or anything of the difficulty. He admitted, however, that Mr. Veal told him of the incident the next morning; and he admitted that it was possible for the lady next door to the Veal home to have heard the screaming without his hearing it. His residence and the Veal residence were situated back to back, facing in opposite directions, on parallel streets. The residence of the neighbor who responded to the call of Miss Tatum was beside the Veal home. It is not improbable that the neighbor whose window was opposite that of the room in which the difficulty occurred heard the screams of Miss Tatum, and that the neighbor whose house fronted in an opposite direction could not hear the screams, although the latter house was nearer.

The witness last referred to testified that he was well acquainted with Mr. and Mrs. Veal and had never observed any ill treatment of the plaintiff by her husband or quarreling between them.

Two other witnesses on behalf of the defendant testified that they were well acquainted with Mr. and Mrs. Veal and exchanged visits with them, but had never observed any disagreement between them. One of them, who lived a mile away from the Veal residence, was asked by the defendant's counsel whether he had heard any cries on the night of July 24, 1914, and replied that he did not hear them until a week after; from which we assume there were some echoes of the occurrence.

The evidence shows that the plaintiff is a lady of culture and refinement, and it is not at all strange that her unhappy domestic relations were not made known even to her most intimate friends. Her sister, Miss Tatum, testified that she did not know there was any domestic trouble between the plaintiff and defendant until she resided in their home, and was then very much surprised to learn of the unhappiness of her sister. In this connection the defendant's failure to offer any evidence in support of his specific denial that the plaintiff had always conducted herself properly, and that she had not given him cause or provocation for ill treatment, is significant.

Although the allegations of the petition referred particularly only to the one instance of ill treatment that occurred on the 24th of July, 1914, the examination of the witnesses, especially by the defendant's counsel, disclosed that the defendant's conduct towards the plaintiff had made her life very unhappy, and that the assault he committed upon her on the 24th of July, 1914, was the culmination of the ill treatment on his part that rendered her living with him intolerable.

There is no reason to doubt the testimony of Miss Tatum or to believe that her description of the violent character of the assault was an exaggeration. The district judge had no doubt of the truth of her testimony. In his reasons for judgment or for refusing a new trial, he said that he was impressed with the veracity of all of the witnesses who had testified in this case, and that to a woman of such refinement as the plaintiff one assault, even of a less violent character than that shown to have been committed by the defendant, might make it intolerable for the wife to continue to live with her husband. But the learned judge concluded that the one instance of cruelty on the part of the husband towards his wife was not, within the meaning of the law, such ill treatment as to render her living with him insupportable.

In support of that view the defendant relies upon the doctrine announced in the case of Fleytas v. Pigneguy, 9 La. 419, and repeated in Primeaux v. Comeaux, 139 La. 549, 71 South. 845, to the effect that only one instance of ill treatment of a wife by her husband during a long cohabitation does not authorize a judgment of separation from bed and board.

Fleytas v. Pigneguy is the case in which Mr. Justice Martin, for the court, called to mind that husbands are men, not angels. In that case, however, it was found that the defendant husband did possess some angelic qualities, that he was "of a quiet, pacific temper and disposition," and that his wife, on the contrary, "was possessed of a violent and choleric temper and disposition." The refusal to grant the wife a separation from bed and board on account of the assault committed upon her by her husband in that case was based largely upon the conclusion that she had given her husband great provocation for losing his temper. On that proposition, that the wife who is at fault in provoking her husband to quarrels and ill treatment is not thereby entitled to a judgment of separation from bed and board, the case has been cited with approval a number of times. See Cooper v. Cooper, 10 La. 251; Rowley v. Rowley, 19 La. 557; De Lalande v. Jore, 5 La. Ann. 33; Trowbridge v. Carlin, 12 La.

Ann. 884; and Lauber v. Mast, 15 La. Ann. 593.

As was said in the case of Cooper v. Cooper, the question with this court is not whether it is best for the parties or for society that a separation should take place, in a case like the present, but whether the plaintiff presents a case within the law regulating that most important relation of social life.

In Rowley v. Rowley, the plaintiff wife was found to have been so much at fault that Mr. Justice Garland, for the court, felt constrained to express the doubt that all wives were possessed of the attributes which Mr. Justice Martin had denied to husbands.

In De Lalande v. Jore, the court found that the conduct of the plaintiff had been unfortunately marked by continual exasperation and violence towards her husband, for which his acts and deportment had afforded no provocation; and, citing Fleytas' Case, Chief Justice Eustis expressed the opinion of the court that, under such circumstances, the plaintiff's first remedy was to seek a reformation of her own conduct and deportment, and, if the evils complained of did not cease with the behavior that had produced them, the interference of the law might then be invoked.

In Trowbridge v. Carlin, it was observed that the law providing for a separation from bed and board in certain cases was intended for the relief of the oppressed party, not for interference by the courts in domestic quarrels in which both parties had committed reciprocal excesses and outrages.

In Lauber v. Mast, Chief Justice Merrick expressed the view of the court that the mode of life and habits of the married couple were to be considered in determining whether one occurrence of ill treatment of the wife by the husband was a sufficient cause for her to obtain a judgment of separation from bed and board.

In Primeaux v. Comeaux, 139 La. 549, 71 South. 845, the evidence showed that the plaintiff had struck her husband with a poker and in the scuffle he only slapped her lightly.

In each of the foregoing cases, the refusal to grant the wife a separation from bed and board was due to her own fault in the premises and rested upon conditions and circumstances not found in the present case. It has never been held unqualifiedly that only one instance of cruelty on the part of the husband towards his wife is not a sufficient cause for granting her a separation from bed and board. On the contrary, each case must depend upon its own peculiar circumstances, such as the provocation for the assault, its mildness or violence, as the case may be, and perhaps to some extent upon the gentle or ungentle character and mode of living of the woman.

In the case of Harrison v. Harrison, 115 La. 817, 40 South. 232, this court took into consideration that a woman of gentility and refinement would shrink from the humiliation of exposure of the unhappiness of her married life, and would rather shield her cruel husband from public censure than to deliver him up to it. And it was said that, to a woman of culture and refinement, one instance of violent assault on the part of her husband might well render her living with him intolerable. We adhere to those views. To announce as a fixed doctrine that only one instance of assault by the husband upon his wife, however unprovoked and however violent, is not a sufficient cause for her to obtain a separation from bed and board, would condemn the unfortunate woman either to suffer the embarrassment of remaining actually, though not legally, separated from her husband, or to suffer further physical punishment or cruel treatment as the price of being freed from the embarrassing alliance.

It is not for the court to say that the wife shall, no more than it is for her to say that she will not, continue to suffer the ill treat-

ment of which she complains. The only question is whether that ill treatment was of such a nature as to render her living with her husband intolerable or insupportable. Our conclusion is that it was of that nature, and that the plaintiff is entitled to the relief prayed for.

There are no offspring to suffer the humiliation of the judgment to be rendered in this case. If the plaintiff and defendant do not become reconciled and re-united within the year allowed by the decree of separation from bed and board, there will be no reason to believe that they might have done so without it.

The judgment appealed from is annulled and reversed, and it is ordered, adjudged, and decreed that the plaintiff, Mrs. Rose J. Tatum Veal, be, and she is hereby, granted a separation from bed and board from her husband, Garland H. Veal, and that the defendant pay the costs of both courts.