### No. 4476.

State of Louisiana ex rel. Attorney General and on the information of the Returning Officers of Election *v.* Jack Wharton et als. A. P. Field, Intervenor.

Where on the third of December, 1872, judgment was rendered by the Eighth District Court, parish of Orleans, dissolving the injunction granted by that court, and dismissing the suit, and said judgment was not signed until the second of January, 1873, after the case was transferred to the Superior District Court recently created, and where on appeal a motion was made to dismiss the same on the ground that the judgment rendered did not require signature, and no appeal could therefore be taken after the lapse of ten days from its rendition;

Held—That the judgment dissolving the injunction and dismissing the suit was a final one, and no appeal could be taken from it until it was signed, which was on the second of January, 1873, and that the appeal was properly made returnable within ten days from that date.

The law creating the Superior District Court authorized the judge thereof to do, in the cases transferred to it from the Eighth District Court which was abolished, what the judge of the latter could have done.

Whether the appointment of either of said judges by the Governor was unconstitutional and void can not be determined in such a collateral manner as on a motion to dismiss.

State ex rel. Attorney General v. Wharton et als.

Where the appointment of the judge was expressly authorized by the statute creating the court, as in the case of an original vacancy, whether this might or might not be sustained as constitutional, in a proper proceeding, is a question not to be settled in this case in which the judge is manifestly an officer *de facto* at least; and his acts must be recognized just as those of an officer *de jure*, until, upon a regular trial, he is disclosed not to be an officer.

Where the affidavit of the appellant declares that, as a member of the State Election Returning Board, his pecuniary interest in the suit exceeds one thousand dollars, and where a reference to act No. 72 of 1871, p. 152, shows that an appropriation was made for the compensation of the same returning officers;

Held—That this mode of establishing an appealable interest under such circumstances is fully sanctioned by our jurisprudence.

The object of the limitation in the constitution to the jurisdiction of the Supreme Court is simply to exclude from it such controversies as are of minor importance.

Where the interest of the State and of the people of the State in the correctness of the ruling of the judge *a quo* is of such magnitude as in this case, the court will not, on a bald technicality, refuse to entertain jurisdiction of the cause, even if there were no pecuniary interest shown, which, however, is not the case in this suit.

Where the matter in dispute involved in the suit is such as to demand or authorize the action of this court, the right to appeal is granted by article 571 C. P. to third persons who allege that they are aggrieved by the judgment rendered in a suit between other parties. The law does not say that such judgment shall be *res judicata* against the third persons to entitle them to appeal.

The appeal must be sustained where, as in this case, the appellant has made the requisite allegations supported by his affidavit and has made it apparent that he is aggrieved by the judgment appealed from, which annuls the authority by which he was declared to be elected Attorney General of the State, whose salary is five thousand dollars per annum, and sets aside the return of the election board which is the foundation of his title to office.

Where it was alleged that appellant had no interest to appeal on the ground that the Returning Board had exercised its authority on his behalf and was *functus officio* ;

Held—That appellant had an interest to have it decreed that the Board of Returning Officers was legal at the time it declared his election.

The objection that full ten days was not allowed in this case to bring up this appeal is without force. The law directs that in such cases the appeal shall be returnable within ten days after the judgment of the lower court. The return day may be less, but not more than ten days.

It was immaterial at whose instance the judgment was signed. The law requires the judge to sign all definitive judgments.

Where it was contended that a membership of the Board of Returning Officers was not an office within the contemplation of the law, and therefore that the suit should not be brought under the intrusion act;

Held—That the members of the board are designated as officers in the act itself creating it, and that they come within the legal definition of the word.

Where the claims of individuals come in conflict, it is the true province of the judiciary to decide what they rightfully are under the constitution and the laws, rather than to decide whether the constitution and laws have been rightfully r wisely made.

Where two sets of officers claim to be the legal Board of Returning Officers, i is difficult to conceive why this is not a judicial question.

The Governor is not vested with the extraordinary discretion to determine who are the returning officers under the law.

The law of the twentieth November, 1872, relative to elections, did not repeal the election law of 1870, which created the Board of Returning Officers, and did not destroy their office. It was merely a revision and re-enactment of the former with emendat ons.

The provisions of the act of 1872 were intended to apply only to elections held under it after its passage, and by no correct or admissible rule of construction can its repealing clause be held to defeat an election had under the previous law, when the results thereof were not yet ascertained.

The Governor is not vested by the act of 1872 with authority to appoint the officers of the Returning Board of Election.

The Governor was wholly without legal right to suspend or remove the Secretary of State *de facto*, recognized as such by a court of competent jurisdiction and by himself.

State ex rel. Attorney General v. Wharton et als.

The extrusion and exclusion of Bovee, the Secretary of State *de jure* from the office by the Governor did not and could not vest in said Governor the control of the office with the right to put in and put out the occupants thereof at his pleasu e. There was no vacancy in the office of Secretary of State, Bovee, the incumbent *de jure*, who was only excluded or suspended, and whose office was in the meanwhile filled by Herron, the Secretary of State *de facto;* and yet Wharton was appointed Secretary of State without reference to any removal or vacancy. The commission is without effect.

Wharton, not being legally commissioned Secretary of State, could not as such be *ex officio* a member of the Returning Board. There is no evidence that he was elected member of the board, and it is not satisfactorily shown that he did take the required oath as a member.

Hatch and Da Ponte were not legally elected members of the Returning Board. The law provides that " in case of any vacancy by death, resignation or otherwise by either of the board, then the vacancy shall be filled by the residue of the Board of Returning Officers." Warmoth, Lynch and Herron were the residue, of whom two, Lynch and Herron, voted for Longstreet and Hawkins, and Warmoth voted for Hatch and Da Ponte.

Bovee, the Secretary of State *de jure* acted as assistant secretary of the said board until he was restored to his office under the decree of this court, after which he voted as a member of the Board.

APPEAL from the Superior District Court, parish of Orleans. *Lynch*, judge of the Fourth District Court, acting in place of *Hawkins*, recused. *Fellows* and *Ray*, for A. P. Field, intervenor and appellant. *Semmes & Mott*, for defendants and appellees.

Justices concurring: Ludeling, Howell and Taliaferro.

Justices dissenting: Wyly and Kennard.

The opinion of the court was delivered by Howell, J.

The petition of the State on the relation, etc. in this case, represents that H. C. Warmoth, F. J. Herron, John Lynch, James Longstreet and Jacob Hawkins, constitute the legal board of returning officers and are duly qualified as such, for making the returns of the elections held in this State on the fourth November, 1872, and that Jack Wharton, F. H. Hatch and Durant Da Ponte, are pretending to be such officers and are attempting to act as such, and are interfering with the above named parties in the discharge of their official duties. The petitioner prays that said Wharton, Hatch and Da Ponte be cited and decreed to be intruders into and usurpers of the office of returning officers of elections, and that said Herron, Longstreet and Hawkins be decreed to be such officers.

In a supplemental petition an injunction is asked for restraining and prohibiting the defendants from acting as such returning officers or interfering in any way with the legal board. On this petition a rule to show cause and a restraining order were granted.

To this rule the defendants made the following answer:

1. "The petition discloses no cause of action of which this court has jurisdiction.

2. "The said Wharton, as appears by the affidavits on file, was duly appointed to discharge the duties of the office of Secretary of State during the suspension of George E. Bovee, and he is actually and peaceably in the discharge of such duties now, and was so at the time the petition and supplemental petition were filed.

3. "That as it appears by the affidavits on file, he and F. H. Hatch and Durant Da Ponte were duly summoned to sit as returning officers for the election held on the first Monday of November, 1872, being the fourth day of said month, and qualified as such, and their election and appointment are valid."

After hearing evidence and argument on both sides, the judge (Dibble) delivered a written opinion, in which he held that the informants were the legal returning officers and ordered that the injunction issue as prayed for.

Two days afterwards, to wit, twenty-first December, 1872, counsel for the defendants moved for "a new trial in the case on the grounds that the judgment rendered is contrary to law and evidence, and also because the plaintiff and relators have no standing in court, the law under which relators claim having been repealed."

This rule was fixed for trial on the twenty-fifth of the same month, on which day it appears that Judge Elmore presided, having been in the meantime inducted into the place of Judge Dibble; and on that day an exception was filed by defendants "to the petition of plaintiffs and their right to have and maintain the said suit, on the ground of and for the reason that the court has no jurisdiction of the subject matter thereof." The rule for a new trial was continued to the second day of December, when, after hearing pleadings and counsel, it was taken under advisement, and on the next day (the third) the Judge (Elmore) granted a new trial, giving as his reason that the act of the legislature, approved twentieth December, 1872, had repealed the act of 1870 creating a board of returning officers, and consequently no such board existed, and there was no one authorized to count the votes or make returns of the election of 1872, until new appointments should be made by proper authority. On the same day, as appears from the minutes of the court a motion was made by defendants' counsel and granted by the judge, dissolving the injunction issued in the case and dismissing the suit.

From the transcript of appeal it appears that this judgment was not signed until the second of January, 1873, when the record of the suit having been transferred to the Superior District Court, and the judge thereof being recused, it was signed by Judge B. L. Lynch of the Fourth District Court, who granted an appeal therefrom to A. P. Field, Attorney General, upon his allegation that he was aggrieved thereby, and his affidavit as to the amount of his interest involved.

The defendants have filed the following motion in this court:

"Now come the appellees and move to dismiss the appeal taken in this case on the following grounds:

1. "The judgment was rendered by W. A. Elmore, Judge of the Eighth District Court on the third day of December, 1872, and was of

a character that did not require signature, and no appeal could therefore be taken after the lapse of ten days from its rendition.

2. "That no judgment rendered by the said Judge of the Eighth District Court could be signed by the Judge of the newly created Superior District Court.

3. "That that portion of the act of the legislature creating the Eighth District Court, which authorized the appointment of a judge is unconstitutional, null and void, and therefore the said B. L. Lynch had no authority, acting in the place of Jacob Hawkins, recused, to sign said judgment.

4. "That A. P. Field, the appellant, has no interest whatever in taking this appeal, which this court can recognize.

5. "That A. P. Field, the appellant, has no interest in the appeal taken by him, inasmuch as the plaintiff returning board has in spite of the decision of the inferior court exercised the authority it claims, canvassed and announced the result of the election as to the office of Attorney General, and therefore as to appellant and his rights the said plaintiff returning board is *functus officio*, and no longer can exercise the functions it claims so far as said Field is concerned.

6. "That said appeal is made returnable on sixth January from a judgment signed second January, 1873, the usual period of citation, ten days, not being allowed and the law requiring the appeal to be returnable in ten days.

7. "The judgment was not signed at the instance or on the motion of Semmes & Mott of counsel for defendants, and if this fact is denied the case should be remanded to ascertain the truth, and the court had no right to sign a judgment unless applied to by the party in whose favor it was rendered."

We have thus detailed the proceedings because the main objections of the defendants, before us, to an examination and decision of this cause are purely technical, and we must therefore be careful to confine our investigation to the matters only which are really and properly presented in the record. And in this connection we will premise that we can give no force or effect to the document filed here during the argument, which bears the signature of the judge who dismissed the case in the court *a qua*. It appears simply to be the original motion, in the handwriting of defendants' counsel, to dissolve the injunction and dismiss the suit, filed on the third of December, and entered in the minutes of that date for the first and only time; there is no date to the act of signing and nothing to show when it was signed; (see C. P. 543, 546); it is not contained in the transcript in its present form and is no where referred to in the pleadings or record in either the inferior or appellate court, and it is inconsistent with the grounds of the motion to dismiss the appeal. We therefore lay it out of view.

State ex rel. Attorney General v. Wharton et als.

*First*—The first ground is untenable. The judgment is one dissolving the injunction and dismissing the suit. It is therefore a final judgment which must be signed, and no appeal could be taken from it until it was signed, which was done on second January, 1873, and the appeal was properly made returnable within ten days from that date. C. P. 546; 3 La. 430; 19 An. 290. Act No. 45 of 1870, § 7.

*Second*—The law creating the Superior District Court authorized the judge thereof to do, in the cases transferred to it from the Eighth District Court which was abolished, what the judge of the latter could have done. Act No. 2 of December 11, 1872.

*Third*—Whether or not the appointment by the Governor of the Judge of the Eighth District Court or of the Superior District Court is unconstitutional, null and void, can not be determined in this collateral manner. He was or is acting under such color of authority that we can not, on a motion to dismiss, go behind it and declare it an absolute nullity. In the case of each of said courts the appointment of the judge was expressly authorized by the statute creating the court, as in the case of an original vacancy. Whether this might or might not be sustained as constitutional, in a proper proceeding, it is clear that this is not the occasion to settle the question. The said judge was or is manifestly an officer *de facto* at least, and his acts must be recognized just as those of an officer *de jure*, until upon a regular trial he is declared not to be an officer. 13 An. 404; 16 Peters 194; 56 Penn. 436; 15 Mass. 180; 13 Wendell 491.

*Fourth*—The alleged want of interest in the appellant is the main ground relied on by defendants.

It was contended in argument that the district court was without jurisdiction because the matter in dispute between the parties is too small, and hence this court has no jurisdiction.

This is met by the appellant with an affidavit of one of the members of the plaintiff board that his pecuniary interest in the suit exceeds one thousand dollars, and a reference to act No. 72 of 1871 (p. 182), shows that an appropriation was made for the compensation of the same returning officers. This mode of establishing an appealable interest, under such circumstances, is fully sanctioned by our jurisprudence. See 20 An. 575; 22 An. 602; 21 An. 336, 448; 23 An. 580, 769. In addition to this there can be no question as to the importance of the matters involved in this controversy. It affects to a great extent the whole political fabric of the State, and has even entered the departments of the federal government. Surely a subject which has commanded such widespread interest, and has required an argument of three hours length from such able counsel as represents the defendants, can not be designated as too insignificant to come within the consideration of the Eighth District Court of New Orleans or of this court.

The object of the limitation in the constitution to the jurisdiction of this tribunal, is simply to exclude from it such controversies between litigants as are of minor importance. This case is not of that class. Under every constitution of this State, containing limitations of juris- diction, this court has entertained jurisdiction of suits of separation from bed and board and of divorce, where there was no appreciable money value involved. See 19 La. 567. And so too of suits by slaves for their freedom, 13 An. 406. The interest of the State and of the people of the State in the correctness of the ruling of the Eighth Dis- trict Court of New Orleans in this proceeding is of such magnitude, that we would be derelict if we should, upon such bald technicality, refuse to entertain jurisdiction of the cause, even if there were no pecuniary interest shown, which however has been done. The chief reliance however seems to be on the fact that A. P. Field, in whose name the appeal is taken, is a third person without interest, and the case of the State ex rel. Sullivan v. Mount, 21 An. 755, is cited as con- clusive against his right to appeal.

In that case this court said, "from his own statements we could not perceive that the appellant, a third party, had any interest whatever in the matter in dispute," and dismissed the appeal. Without ques- tioning the conclusion arrived at, it does not, in our opinion, settle the point as to the appeal in this case where the statements of the appellant do make his interest apparent. Every case must be deter- mined upon its own facts and merits.

A reference to the plain provisions of the law on this subject will furnish a safe guide. Art. 571 C. P., says: "The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment."

This seems to be unambiguous. It must be, of course, applied with reference to the constitutional jurisdiction of this court. If the mat- ter in dispute involved in this suit, is such as to demand or authorize the action of this court, the right to appeal is accorded by the above article to third persons, who *allege* that they are aggrieved by the judgment rendered in a suit between other parties. The law does not say that such judgment shall be *res judicata* against the third persons to entitle them to appeal. It does not say that they shall have such right of action against one of the parties as to sustain an intervention in their suit, and claim the very thing which one of the parties is claiming. The only condition is they must make a reasonable show- ing that the judgment complained of is calculated, in its effects, to in- jure them. Now in this case, A. P. Field has made the requisite alle- gation, supported by his affidavit. And he has made it apparent to

State ex rel. Attorney General v. Wharton et als.

our minds that he is aggrieved by the judgment appealed from, which annuls the authority by which he was declared to be elected Attorney General of the State, whose salary is five thousand dollars per annum, and the return of the plaintiff board is the foundation of his title to his office. Under the law it is not necessary, in support of his right of appeal, that he should demand in this suit to be declared legally elected nor that he should seek to regulate the judgment as between the parties to the suit, but simply to regulate it so far as it affects him. The difficulty of adjusting the rights involved in a litigation does not control the right of action. The cases in 20 An., 21 An., 22 An. and 23 An., above cited, support the right of the appellant to this appeal. That of the State ex rel. Byerly v. Judge, 23 An. 768, was much less favorable to such right than this case is, and in that case we sustained Byerly's right as a third person to appeal.

But the interest of A. P. Field as the attorney general of the State, by whom such actions as this may be brought, is such as to make it appropriate in him to ask a revision of the judgment rendered in the court of the first instance. If, however, there should be a reasonable doubt as to the right of appeal now before us, under the well established jurisprudence of this court we would maintain it as a constitutional right.

*Fifth*—What is said above disposes practically of the ground that the appellant has no interest, because the plaintiff board has exercised its authority in his behalf and is now *functus officio*. His interest is in having the legality of said board established at the time it was exercising its functions. He does not pretend that said board shall again act in his behalf, but that it shall be decreed to have been the legal board of returning officers, when it declared his election.

*Sixth*—The objection that full ten days were not allowed to bring up the appeal is without force. The law directs that the appeal in such cases shall be returnable within ten days after the judgment of the lower court. The return day may be in less but not more than ten days.

*Seventh*—It is immaterial at whose instance the judgment was signed. The law requires the judge to sign all definitive judgments. C. P. 546.

Our conclusion is that this appeal is properly taken and the motion to dismiss is refused.

The answer of the defendants to the rule *nisi* pleads no cause of action, and puts at issue the right of the respective parties to be declared the legal returning officers.

Upon the plea or exception thus made it was contended in argument that the board of returning officers is not an officer within the contemplation of the law, and therefore the suit should not be brought under the intrusion act. The counsel could hardly be serious in this, as in

another part of his argument he insisted that it was a court vested with powers to judge. Be that as it may, the members of the board are designated as officers in the act itself creating it. "An office is a right to exercise a public function or employment, and to take the fees and emoluments belonging to it." An officer is one "lawfully invested with an office." Bouvier, *verbo* Office. The fact that no emoluments or fees are fixed in the law itself does not necessarily imply that none will be given or that none are attached to the office. In this case the contrary appears to be true, and it comes clearly within the above definition.

It was also contended, somewhat vaguely it is true, that the matters at issue are not properly questions to be determined by the judiciary. We have heard no good reason to sustain this proposition, nor can we imagine any. It is not and can not be denied that we have a constitution and laws made in conformity thereto in this State; and it is the province of courts to decide on the rights which conflicting parties can legally set up under them. "Constitutions and laws precede the judiciary, and we act only under and after them, and as to disputed rights beneath them rather than disputed points in making them.

When claims of individuals come in conflict under them, it is the true province of the judiciary to decide what they rightfully are under such constitution and laws, rather than to decide whether those constitutions and laws have been rightfully or wisely made." 7 How. 22. Two sets of individuals claim to be the legal board of returning officers. It is difficult to conceive why this is not a judicial question. It is the province of courts to say what the law is—*jus dicere*. Because the law makes it the duty of the Governor to open, in the presence of the said returning officers, the statements of the supervisors of registration, it can not be inferred, as counsel intimate, that he is vested with the extraordinary discretion to determine who are the returning officers under the law. No such power or discretion is conferred on him.

The next objection is that the law signed by the Governor on the twentieth November, 1872, relative to elections, repealed the election law of 1870 which created the board of returning officers, and thereby destroyed their office.

If this were so, the action of the judge of the Eighth District Court in granting a new trial and subsequently dissolving the injunction and dismissing the suit, were nullities for want of parties to stand in judgment. But we are clearly of opinion that no such effect followed the passage of the said act.

Both laws were enacted to regulate elections in this State; the one of the later date is but a revision and re-enactment of the former, with such emendations as were deemed necessary. The new law, it is

true, contains a repealing clause, but it could not have been the inten-tion of the legislators to repeal or destroy what they had carefully guarded in the new law. The office of the board of returning officers is not abolished, but is preserved in the act signed on twentieth No-vember, 1872. The mode of filling the office alone is changed. Under article 122 of the constitution, the old members continued in office to discharge the duties imposed on them by the law, until their succes-sors were inducted into office, and by the election law they were to continue in session until the returns are completed. Such is the doc-trine enunciated in State ex rel. Holmes *v.* Wiltz, 11 An. 439; State *v.* Kreider, 21 An. 482; and State *v.* Brewer, 22 An. 273.

It is very clear that the provisions of the act of 1872 were intended to apply only to elections held under it after its passage, and by no correct or admissible rule of construction can its repealing clause be held to defeat an election had under the previous law and the results thereof not yet ascertained. It would be worse than trifling with the right of suffrage thus to change laws regulating elections. The difficulty is not remedied by the theory suggested by counsel, that after the approval of the new statute, the Governor, *ex necessitate rei*, must or could appoint a new board to complete what, by his own act, the former board was rendered powerless to complete. Such a necessity could not be created by him for such a purpose. It is inconsistent with and opposed to our republican system of government. The Governor is not vested by the new law with authority to appoint the returning officers. They are to be elected by the Senate, and the Senate as elected had to be organized before it could elect, and its organization depended on the result of said election.

On the merits of this case there is no serious difficulty.

By the act 100 of 1870, under which the election was held on the fourth of November, 1872, the Governor, the Lieutenant Governor, the Secretary of State and John Lynch and T. C. Anderson, or a majority of them, were the returning officers of said election, and a majority of such majority constituted a quorum. Two of them, the Lieutenant Governor and T. C. Anderson were disqualified from acting because of being candidates. These officers were required to meet within ten days after the election to canvass and compile the state-ments of votes made by the supervisors of registration, and make returns of the election to the Secretary of State, and to continue in session until such returns are completed. Four of them, the Governor, Lieutenant Governor, the Secretary of State and John Lynch, met on the twelfth of November, and after selecting Governor H. C. Warmoth President, and John Lynch, Secretary of the board, and discussing the question of the disqualification of two members, adjourned to meet on the next day. The minutes of these two meetings as kept by the

president and by the secretary of the board are in the record, and they substantially correspond up to a certain point of the proceedings on the second day.

We will adopt the minutes signed by H. C. Warmoth, up to that point, to wit:

"The board met at eleven o'clock, Tuesday November 12, 1872, at the Governor's parlor, in the State House.

"Present:    Messrs. Warmoth, Governor; Pinchback, Lieutenant Governor; Herron, Secretary of State, and John Lynch.

"Mr. Herron raised the question of the qualification of Messrs. Pinchback and Anderson to act as members of the board.

"Mr. Warmoth asked for time to examine the question and for the presence of Mr. Anderson.

"After much debate the board adjourned to meet at 12 M., November 13, at the Governor's office.    At 12 M. the board met pursuant to adjournment.    Present: . Messrs. Warmoth, Lynch, Pinchback and Herron.

"Chief Justice Ludeling appeared to swear in the members of the board, and each took the oath with the exception of Mr. Pinchback.

"On motion of Mr. Lynch it was ordered, that by reason of ineligibility, Messrs. Pinchback and Anderson be not permitted to act as members of the board.

"Mr. Pinchback asked the opinion of the Chief Justice, who took the same view.

"Mr. Pinchback acquiesced in the action of the board and withdrew.

"Mr. Jack Wharton then appeared and presented a commission from the Governor as Secretary of State, exhibited his oath of office as Secretary of State," etc.        ⃰     ⃰     ⃰

Just here the difference in the two accounts of the proceedings begins.    Warmoth states that Wharton exhibited his oath as a member of the board and took his seat; that F. H. Hatch and Da Ponte were elected by the votes of himself and Wharton (Lynch not voting) to fill the vacancies; that Hatch and Da Ponte were then sworn by Judge Cooley and took their seats; that at this point General Herron stated that the proceedings were irregular and left the room, followed by Lynch.

Lynch, the regular secretary of the board, gives a somewhat different account, and shows that he and Herron voted, after formal nomination, for James Longstreet and Jacob Hawkins to fill the vacancies, and that he and Herron voted no upon the nomination of Hatch and Da Ponte made by Warmoth, after which he and Herron left the room.

We think there can be no doubt that the effort to make Wharton a member of the board was a total failure.    Herron is described by Warmoth himself as Secretary of State and a member of the board

by virtue of such office up to the appearing of Wharton, during the proceedings on the second day of the meeting. The order suspending Bovee as Secretary of State and appointing Herron by the Governor, on the twenty-ninth August, 1871 (which was before us in the case of the State ex rel. Bovee v. Herron), is in this record as a part of Wharton's testimony. This document, the above named suit, and the published statutes of the State since August, 1871, show that Herron was *de facto* Secretary of State, and according to the opinion in the suit just named and the constitution and laws of the State the Governor was wholly without legal authority to suspend, remove or appoint said officer. The extrusion and exclusion of Bovee from the office by the Governor did not and could not vest in the Governor the control of the office, with the right to put in and put out the occupants thereof at his pleasure. His attempted appointment of Wharton was an absolute nullity and gave Wharton no color of authority to act either as Secretary of State or member of the Board of Returning Officers. Owing to the manner in which the case of the State ex rel. Bovee v. Herron, decided finally about the time of the events above narrated was managed, there was a final judgment of a court of competent jurisdiction decreeing the suspension of Bovee as Secretary of State and appointment of Herron to discharge the duties thereof to be legal; and the effect of that judgment continued until the decision by this court (about second December, 1872,) just referred to. Hence, as to the world, Herron was the acting Secretary of State at the above date and it was not in the power of the Governor to remove him— the Governor having no control of said office. There was no vacancy in the office, Bovee being only suspended or excluded, and yet the commission of Wharton, dated thirteenth November, 1872, the day he claimed to be a member of the board, shows that he was appointed Secretary of State without any reference to any removal or vacancy—a commission without any effect.

There is no pretense that Wharton was elected a member of the board, and it is not satisfactorily shown that he did take the required oath as a member. It follows that as Wharton was without any official authority or standing, his pretended vote, as a member of the board of returning officers on the nomination of Hatch and Da Ponte, was equally without legal effect, and that the said Hatch and Da Ponte were not elected members of said board, a majority not having voted for them; but that Longstreet and Hawkins, who received a legal majority of the votes were duly elected, and they with Warmoth, Herron and Lynch constituted the legal board, a majority of whom could act. The law provides that "in case of any vacancy by death, resignation or otherwise by either of the board, then the vacancy shall be filled by the residue of the board of returning officers." Warmoth,

Lynch and Herron were the residue, of whom two, Lynch and Her-ron, it is shown, voted for Longstreet, and Hawkins and Warmoth voted for Hatch and Da Ponte.· It appears from the record that Bovee acted as assistant secretary of the said board until he was restored to his office under the decree of this court, after which he acted, it seems,. as a member of the board.

Our conclusion is that at the institution of this suit Warmoth, Her-ron, Lynch, Longstreet and Hawkins were the legal board of returning officers under the law of 1870 (No. 100), for the election on the fourth day of November, 1872; that the defendants, Wharton, Hatch and Da Ponte were intruders; that the injunction against them properly issued; that the act No. 89 of twentieth November, 1872, did not have the effect of abolishing the said board of returning officers, who met on the twelfth November, 1872, and were by the first mentioned law required to "continue in session" until the returns of said election were completed; and that the judge of the Eighth District Court for the parish of Orleans erred in dissolving the said injunction and dis-missing this suit.

It is therefore ordered and adjudged that the Board of Returning Officers, composed of H. C. Warmoth, F. J. Herron, John Lynch, James Longstreet and Jacob Hawkins, was the legal board of returning officers of elections of the State of Louisiana, and it is decreed that the judgment of the court a qua be avoided and reversed so far as the appellant is concerned, and that the defendants, appellees, pay costs. of this appeal.

----

WYLY, J., *dissenting.* The judgment of a court without jurisdiction *ratione materiæ* is a nullity so absolute it need not be pronounced.. The court will notice the want of jurisdiction *ex proprio motu.*

It is well settled that an intervention is not allowable where the party seeking to intervene would have no separate cause of action against either or both of the litigants, or where he has no claim to the immediate object of the citation.

The immediate object of the litigation in the case before us is to determine the title to the offices of the returning board of election,. under act No. 100 of the acts of 1870.

The controversy is between the relators and the defendants for these offices.

A. P. Field. who intervenes and brings up this appeal, does not claim the offices in dispute. He holds the office of Attorney General; and as neither the relators nor the defendants set up claim to his office, or attempt in any manner to impede the administration thereof, he has. no cause of action against either of them.

He, therefore, has no right to intervene, because the law will not allow a party to thrust himself into a litigation he would be prohibited from instituting for himself.   The object of interpleading is to abridge litigation and avoid the multiplicity of suits.

Having no cause of action against either of the litigants and not claiming the offices in dispute, how can A. P. Field interplead, and by appealing protract a vexatious litigation dropped by the original parties ?

Such pleading is not allowable in ordinary suits.

But this is a proceeding under the intrusion act to determine whether the relators or the defendants are entitled to the offices of the return- ing board of election, under the act of 1870.

The law provides that suits of this character must be brought in the name of the State on the relation of the District Attorney or the Attorney General, against the party accused of intruding into or unlawfully holding an office; that the name of the person claiming to be rightfully entitled to said office may be joined as plaintiff with the State, and that when the intrusion is made apparent the court may decide the defendant to be an intruder, eject him from office, and order that the person joined with the State as plaintiff may be inducted into office.   Acts of 1868, pages 71 and 199.

No provision is made for an intervention in a suit of this kind, and in my opinion it is not allowable.

If a controversy for a certain office be settled improperly under a proceeding of this character, and the person inducted into office is not entitled to it, as against a third party who was not joined as plaintiff with the State, the rights of such third party are in no manner im- paired.   He can by mandamus, if necessary, compel the District At- torney or the Attorney General to institute, in his behalf, a proceed- ing in the name of the State, under the intrusion act, and have his title to the office established and the previously successful litigant ejected therefrom.   After the time for contesting the election has passed, the only suit to establish title to office that can be brought, is a suit under the intrusion act, and that as before remarked must be brought in the name of the State.   The State, as before remarked by this court, must take the initiative; no one can litigate for office, under that statute, in his own name.   And if a person can not in his own name bring an action for the office he claims, how can he accom- plish the same object by filing a petition of intervention in his own name, setting up his separate demand?

As I understand the intrusion law no one will be allowed to demand an office in this State in a proceeding in his own name, whether he pleads directly in a separate action, or whether he interpleads in an action between other parties.

Whenever he sees fit to set up his demand for an office the statutes to which I have referred prescribes the precise form or mode of procedure in which he must bring that demand in order that the court may decide the title to the office.

If the State under the intrusion law must be the prominent litigant and no demand for office can be set up except in the name of the State, how can there be an intervention? Can the State intervene in her own suit? Can the State suing for A set up a separate demand in her own suit in behalf of B? Can the same party be both plaintiff and intervenor in the same suit? Such a proposition to a legal mind is utterly absurd. But, then, how are the rights of several persons claiming a particular office to be determined without numerous suits, which the law abhors. The answer is plain and simple. It is found in section nine of the intrusion law, being act No. 58 of the acts of 1868. It is in these words: "That where several persons claim to be entitled to the same office or franchise, one action may be brought against all such persons in the same action in order to try their respective rights to such office or franchise."

Here, then, to simplify pleading and to settle conflicting titles to office, the State has enacted a law by which she can in her own name, in one action, sue all the claimants to the office in dispute, and in the same action "try their respective rights to such office or franchise." From the very language of the law it is apparent that no interpleading was contemplated by the law-giver. And, indeed, under the statute it could not be done, because, as before observed, the State alone can bring the suit and she can not, in the same action, occupy two contradictory positions, that of plaintiff, the prominent litigant, and that of intervenor, a third party, a stranger to the suit. Is it doubted that the State is the real litigant in suits under the intrusion law? I point to the State v. Kreider, 21 An. 482, and numerous other decisions wherein this court has so often affirmed it; and I refer to the statute itself.

It is well settled that in a contest for office the pecuniary interest involved is the amount of the salary.

In the suit before us there is no salary at all. Consequently, as between the original parties, the matter in dispute does not exceed $500, and this court is without jurisdiction ratione materiæ.

To ascertain the jurisdiction of this court it is idle to discuss general principles, or to cite the adjudications of the Supreme Court of the United States, because it does not spring from such sources. The jurisdiction of this court is limited and defined in precise terms in the Constitution of this State, the instrument creating it, and beyond these limitations we can not go without usurpation.

This court has only appellate jurisdiction, "which shall extend to all cases where the matter in dispute shall exceed five hundred dollars;" * * * Article 74, Constitution of 1868.

But the intervenor and appellant contends that as his salary of Attorney General is $5000, he has a pecuniary interest in this litigation exceeding $500, and therefore the court as to him has jurisdiction. For argument let us assume that this is so. We then have the anomaly of a jurisdiction as to one litigant and no jurisdiction as to the others, and positively no jurisdiction as to the offices in controversy, the immediate object in dispute, and of the litigation.

The matter in dispute between "A" and "B"—the very object of their litigation has a pecuniary value less than five hundred dollars; neither can appeal to this court for want of jurisdiction; the difficulty can be obviated; the judgment below can be revised; all that is necessary is for a third party to aver that as he owns some other object worth five thousand dollars, he has a pecuniary interest in the controversy exceeding five hundred dollars, and therefore can intervene and appeal.

If the doctrine contended for be true, all the cases decided by the inferior courts of this State, including justices of the peace, may in the same manner, be brought before this court for revision. Such a proposition is unreasonable and absurd.

In my judgment the title to an office, the salary of which is less than five hundred dollars, can not be determined by this court for want of jurisdiction *ratione materiæ*, it matters not who is the appellant, and it matters not how many affidavits are filed setting up a pecuniary interest exceeding the amount of the salary.

"A third party appealing from a judgment must show a direct pecuniary interest in the subject matter of the suit." State ex rel. Belden, Attorney General *v.* Markey, Kaiser, et als. 21 An. 743; 1 N. S. 308; 4 N. S. 342; 2 R. 391.

The subject matter of this suit is the title to the offices of returning board of election, under act No. 100 of the acts of 1870, to which offices there is no salary. Therefore neither the original litigants nor the intervenor has a direct pecuniary interest in the subject matter of this suit, and therefore can not appeal, because this court is without jurisdiction *ratione materiæ*.

It is therefore my judgment that if an intervention in a case like this were allowable, and if a third party could intervene and appeal from a judgment not appealable by the original litigants (because the matter in dispute is less than $500), the intervenor, A. P. Field, has not shown a direct pecuniary interest in this suit sufficient to entitle him to the appeal or sufficient to give this court jurisdiction.

If he had been joined as plaintiff with the State in this suit, he could not appeal, because the subject matter of the suit is less than $500. The argument, however, is urged that Field has a direct pecuniary interest in this case, because as the delay for contesting elections

has passed (more than ten days after the election having elapsed), he has no other way to vindicate his title to the office of Attorney General. That if the board by whom he was returned as elected was not the lawful returning board, then his title to the office has no basis upon which to rest. Consequently his entire salary as Attorney General is involved in this controversy between the two returning boards. The answer to this argument is two-fold:

*First*—The controversy between these returning boards in no way prevented him from instituting, within proper time the usual proceedings to contest the election.

*Second*—His title to the office of Attorney General can not now be determined as against H. N. Ogden, his opponent at the election, because the latter is not a party to this proceeding. Besides, in a controversy for one office the title to another office (separate and distinct) can not be determined. A proceeding "under the in'rusion act" can only determine the title to the office in dispute, and no one can become a party to that proceeding who does not claim the immediate object of the litigation.

If A. P. Field, who was returned as elected Attorney General, can intervene in this controversy, every candidate for office at the late election, every person expecting an office if his party prevails, and every person incidentally or remotely interested in the settlement of the issue, may intervene, and the rights of everybody, the titles to all the offices in the State, may at once be determined, notwithstanding the opponents of these various intervenors were not cited and were not parties to the suit between these returning boards.

An argument that leads to such monstrous absurdities ought not to be accepted by this court as correct.

In the State v. Mason et als., 14 An. 506, where parties not claiming the offices of mayor and councilmen of Carrollton contested the election of the defendants to said offices, this court said: "It appears reasonable that no one but a person pretending to have a right to an office should be permitted to test the right of the incumbent to that office."

In Voisin and others v. Leche and others, 23 An. 25, a similar case, this doctrine was affirmed by this court, the identical language being adopted by Chief Justice Ludeling, the organ of the court.

In State ex rel. Sullivan et als. v. Mount et als. 21 An. 755, where the controversy was between two boards of school directors, and where Kendall, the secretary of one of the boards appealed, claiming that as his salary was eighteen hundred dollars he had a pecuniary interest in the controversy exceeding five hundred dollars, this court held that: "In a controversy for office under 'the intrusion act,' a

third party not holding or claiming the office in dispute, can not appeal from the judgment of the court *a qua.*"

There the board that appointed Kendall secretary was unsuccessful in the controversy with the other board of school directors, and could not appeal, because of the want of a pecuniary interest (there being no salary allowed these school directors of the parish of Orleans), Kendall, the secretary appealed and contended that unless his right to appeal was maintained, he would lose his office, affording him a salary of eighteen hundred dollars per annum; that the very basis of his office rested upon the reversal of the judgment in the controversy between these two boards of school directors.

The court held that as he did not claim the offices in dispute (the immediate object of the litigation), Kendall could not "appeal from the judgment of the court *a qua.*"

Here neither of the returning boards of election have appealed from the judgment in the controversy between them, because having no salary there is no pecuniary interest involved as between them. A. P. Field claiming to be returned Attorney General by one of these boards whose suit under the intrusion act, was dismissed, has appealed and he contends that unless that judgment is reversed and the board which returned him as elected Attorney General is recognized by this court and declared the lawful board, his title to that office has no basis upon which to rest.

The case presented by him is identical in principle with that presented by Kendall, and should have the same solution. He is a third party, not claiming the offices in controversy, and " can not appeal from the judgment of the court *a qua.*" 21 An. 755.

The appellant cites the case of Byerly *v.* Judge of the Eighth District Court (23 An. 768), to show that a third party having an appealable interest may appeal.

That case is not like the one before the court; Byerly showed a direct pecuniary interest in the matter in dispute.

I deem it proper to remark, however, that there is a feature of that case that I do not approve of. I was not present at the hearing and took no part in its decision.

Whatever comfort it may give the appellant, however, is utterly annihilated in the subsequent final decision of that same case, reported in 24 An. 115.

The case in 12 An. 48, cited to show that a third party may appeal, is wholly unlike the case now before the court. There the property of a third party had been seized and the appeal was from the judgment dissolving his injunction. It being a separate demand, C. P. 398, and the value of the property being sufficient to give this court jurisdiction, there was no error in maintaining the appeal.

There are other grounds for dismissing the appeal which I deem it unnecessary to notice, because, to my mind, the argument which I have endeavored to make fully maintains the exception of defendants, that A. P. Field has no right to take this appeal. Believing that the case is not within the jurisdiction of this court, and that the decree of a court without jurisdiction *ratione materiæ* is an absolute nullity, I hardly think it necessary to enter upon an elaborate discussion of the issues presented for adjudication on the merits. I will state, however, some of the conclusions forced upon my mind from a careful consideration of these questions.

I believe the Governor had the right to sign the new election law on the twentieth of November, 1872; that it became operative from the moment of the signing, and that it entirely repealed the law creating the offices in controversy, to wit: act No. 100 of the acts of 1870.

That the Governor has the right in this State to sign and approve laws after the session of the Legislature has ended, has often been decided by this court; indeed I regard the jurisprudence settled on this point. But the appellant contends, with some show of plausibility, that when this act was signed (the twentieth of November, 1872), the legislature that enacted the law had passed out of existence (the terms of most all of the members of the General Assembly having expired); that with the cessation of their terms ended all of their unfinished business; that the Governor could not complete by his approval and signature a statute after its authors had ceased to exist.

This argument is ingenious but unsound. The fallacy lies in supposing that the law-making power had ceased to exist. While our structure of government remains neither of the co-ordinate branches thereof can cease to exist. The legislative, executive and judicial departments never cease to exist, although the persons entrusted by the people to administer them often discontinue to do so, because of death, resignation, or the lapse of the terms for which these public functionaries were chosen.

In this State the effect of a repealing law is not always a question of construction.

When a repealing law, like any other law, "is clear and free from ambiguity, the letter of it is not to be disregarded under pretext of pursuing its spirit." C. C. 13.

It is only when the law is dubious in its language that its meaning must be sought by construction. C. C. 16.

In my opinion the election law approved twentieth November, 1872, entirely repealed the law of 1870. It devised a new and different way of canvassing the votes and making the returns, and it entirely abolished the offices involved in this controversy. How the incumbents of offices that have been abolished can pretend to hold over under

article 122 of the constitution till their successors are inducted into office I cannot imagine.

How can there be an inducting of successors into offices, that do not exist?

But great stress is laid upon the case of Kreider, 21 An. 482, and it is insisted that the ruling in that case covers this case.

I do not think so. The statute interpreted in that case differed very materially from the one now under examination. There the court held that: "The thirteenth section of the act of September 14, 1868, repealing the charter of Jefferson, approved March 8, 1867, did not abolish the offices of the corporation. This clause only repealed the old charter in so far as its provisions were not incorporated in the new charter."

The title of that act was "An Act for revising and amending the charter of the city of Jefferson." The title of the act only proposed to "revise and amend" the charter. Under cover of such a title the old act could not be abolished, and any clause to that effect would be repugnant to article 114 of the constitution, requiring the objects of every statute to be expressed in the title thereof.

In the Kreider case it was held that the "clause only repealed the old charter in so far as its provisions were not incorporated in the new charter."

The provisions of that act " did not abolish the offices of the corporation," but continued them.

In the statute before us, the offices of returning board in the old law, are not carried over and incorporated in it. Therefore these offices are abolished under the authority of Kreider's case, which has been produced to show the reverse.

In my judgment, the act approved twentieth November, 1872, is not mere revisory legislation; but whether it is not, is of no consequence. Because the offices claimed by the relators under the old law are abolished, if not directly at least by implication, because the continuing of said offices is not provided for in the new law and it is inconsistent therewith.

The provision of act No. 100 of the acts of 1870 creating these offices and designating the duties to be performed therein is in conflict with the provisions of the act of twentieth November, 1872, and is therefore repealed.

This was the view taken by this court in the analagous case of the State ex rel. Montieu v. Lavigne, 23 An. 111.

Here, to my mind, another difficulty arises. What judicial effect can the decision have? What legal right shall we order to be executed? A. P. Field can not be put into the offices in controversy, because he don't claim them. We can not eject the defendants and induct into

these offices the relators, because the plaintiffs have not appealed from the judgment dismissing their suit. 1 N. S. 308.

Besides the defendants are not claiming the offices, but contend that they, as well as the plaintiffs, are out of office by reason of the approval of the election law of 1872.

Furthermore, if the approval of said law is not valid, the relators have nothing to contend for, having canvassed and made their returns, notwithstanding the suit, they have exhausted the powers confided to them and they are now *functus officio;* they are no longer excluded from office. There are other questions which I deem it unnecessary to discuss.

With all due respect for the views of my learned associates who compose the quorum deciding this case, I feel constrained to differ with them in the conclusion to which they have arrived, because I believe their decision is not in harmony with the analogies of our law and the numerous adjudications of ourselves and our predecessors.

I believe that it practically overrules many important principles and points of practice heretofore deemed settled, and that it is a new departure in the jurisprudence of our State.

For the reasons stated I feel constrained to dissent in this case.

---

KENNARD, J., *dissenting.* I dissent from a majority of the court. A motion to dismiss this case is made on the following grounds, to wit:

*First*—That the judgment rendered by the judge *a quo* did not require signing and can be appealed from only within ten days from rendition.

*Second*—That no judgment rendered by the judge of the Eighth District Court could be signed by the judge of the newly created Superior Court.

*Third*—That the portion of the act creating the Superior Court which authorizes the appointment of the judge is unconstitutional and therefore Lynch, the judge of the Fourth District Court, could not act for Hawkins, the appointed judge of the Superior Court, who recused himself.

*Fourth*—That A. P. Field, Attorney General, has no interest which allows him to appeal.

*Fifth*—That the Returning Board, defendant, has acted and is *functus officio.*

*Sixth*—That the appeal is made returnable January 6, 1873, from a judgment signed second January, 1873, the usual period of citation being ten days, the law requiring the appeal to be returnable in ten days.

*Seventh*—That the judgment appealed from was not signed at the instance of the defendants, and if this fact is denied, the case should be remanded to ascertain the truth, that the court was only authorized to sign the judgment upon application of the party in whose favor it was rendered.

The facts of the case necessary to decide the motion to dismiss are:

That the suit was dismissed by the judge of the Eighth District Court because a new law, approved November 20, 1872, No. 98, entitled "An Act to regulate the conduct and to maintain the freedom and purity of elections; to prescribe the mode of making returns thereof, to provide for the election of returning officers and defining their powers and duties; to prescribe the mode of entering on the rolls of the Senate and House of Representatives; and to enforce article one hundred and three of the constitution, repealed the election law of 1863, and as there is no existing Returning Board" there can be no party to complain and appeal.

A brief history of the case is essential to a clear understanding of the law applicable to the motion to dismiss—the sole question now under discussion.

The petition alleges that Jack Wharton, F. H. Hatch and Durant Da Ponte are pretending to be returning officers and are interfering with plaintiffs, Warmoth, Herron, Lynch, Longstreet and Hawkins, in the discharge of their duties.

The above named five persons—four only of whom are shown to be plaintiffs—are the real plaintiffs. They file a supplemental petition and pray for an injunction, and ground their application on the fact that the attempt of defendants to act in the manner alleged in the original petition, and to sit as returning officers, will defeat the object of this suit and render nugatory the judgment therein prayed for.

A rule *nisi* was granted upon this supplemental petition, which after filing of affidavits and counter affidavits, was made absolute and the injunction granted by the Eighth District Court. An answer to the rule *nisi* was filed answering:

*First*—That the supplemental petition disclosed no cause of action of which this court has jurisdiction.

*Second*—That Wharton was duly appointed to discharge the duties of Secretary of State during the suspension of Herron.

*Third*—That Wharton, Hatch and Da Ponte were duly summoned to sit as returning officers for the election held the first Monday of November 1872, being the fourth day of said month, and qualified as such.

There are two judgments of the lower court, one rendered November 19, 1872, notice of which issued the same day; the sheriff received it on the twentieth and served it on the twenty-second of November, on Hatch and Da Ponte, and on twenty-eighth on Wharton.

On November 21, defendants moved for a new trial on the grounds that the law is repealed under which the suit was instituted, and that the judgment is contrary to law and evidence. A new trial was granted. On November 25, defendants filed an exception to the jurisdiction of the court.

Three different judges sat upon this case between its first institution and the dates of the appeals. Judge Dibble's last act was November 19, the date of the rendition of the judgment appealed from.

Judge Elmore's first act was the granting of the new trial. This order was made December 3, 1872, and on the same day Elmore, judge, dissolved the injunction and dismissed the suit on the grounds that the act No. 98, approved November 20, 1872, had taken the place of the old law and that no one had authority to count the votes or make returns of the election of 1872 until new appointments are made by proper authority.

All the proceedings up to this point had been in the Eighth District Court.

On December 17, the Superior Court was acting in the case. A motion on that day was made by A. P. Field, alleging that he was Attorney General, and that the judgment in the case rendered by the Eighth District Court "jeopardizes" the position of your petitioner in his office, whereby your petitioner has an interest over five hundred dollars, his salary being five thousand dollars per annum.

A devolutive appeal was granted the same day, December 17, by Lynch, then judge of the Fourth District Court, acting for Hawkins in the Superior Court. On January 2, 1873, another petition for appeal is made—the judgment is signed on the same day.

The appeal is again granted, another bond for the same amount, three hundred dollars, is given and the order is that this appeal be devolutive and suspensive.

After unweaving this "tangled web" of facts, the points of law necessary to determine the question of dismissal are few, simple, and well settled by the jurisprudence of this court, and these decisions are supported as sound law by adjudicated cases in most if not all of the States, and of the Supreme Court of the United States.

I will consider first the question of jurisdiction, as determined by the amount involved, and whether Field's interest, who is sole appellant, even were it decided that the amount as between the original parties to the suit was sufficient to give jurisdiction, amounts to five hundred dollars.

What is the allegation made in the petition of intervention by Field under which he offers proof by his affidavit of his interest? The language of his petition is that the judgment "jeopardizes" his position in his office.

State ex rel. Attorney General v. Wharton et als.

The case of the "State ex rel. D. C. Byerly *v.* The judge of the Eighth District Court, 23 An. p. 768," decided by this court without dissent November 1871 ; Taliaferro, J. is relied upon as sustaining this view.

In that case Byerly sought relief by appeal from a judgment rendered on a mandamus proceeding against John S. Walton, Administrator of Finance, in favor of the clerks of the Fourth and Eighth District Courts, ordering Walton to file all suits under his control, irrespective of amounts involved, in said courts, alleging that his interest was over five hundred dollars, as it deprived him of much more than that, his court having previously had jurisdiction to the exclusion of all other district courts, of all suits where the amount did not exceed one hundred dollars.

The court *a qua* refused him the right to appeal and this court reversed the judgment.

Judge Taliaferro, the organ of the court, said: "It is settled by several decisions of this court that a third party may appeal from a judgment if he allege and show a direct and pecuniary interest in a suit, and that that interest amounts to a sufficient sum to give jurisdiction to the appellate court. The relator in this case made oath in the court below that he has an interest in this case exceeding one thousand dollars resulting to him from fees of office accruing to him as clerk of the Third District Court."

What interest has Field to disturb the judgment appealed from? He could have none whatever, provided the members of the board, who were defendants, did their duty, which was to count the votes and make returns. A majority of votes for him counted by that board would secure his salary fully as well as by the other board.

What does the law presume with reference to its officers? That they will do their duty. This presumption is as uniform as that innocence is presumed until guilt is proven.

I can not consent to give this court jurisdiction by a presumption that violates the first principles of all law.

Courts should not intervene on allegations of parties' rights being in jeopardy, except in a few cases specially provided for and with great caution.

In the case of the United States *v.* The brig Burdett, 9 Peters 682, the Supreme Court of the United States say—

"That frauds are frequently practiced under the revenue laws can not be doubted; and that individuals who practice these frauds are exceedingly ingenious in resorting to subterfuges to avoid detection is equally notorious. But such acts can not alter the established rules of evidence, which have been adopted as well with reference to the protection of the innocent as the punishment of the guilty.

"A review of the evidence in this case must create a suspicion of fraud.

"This is the rule (the presumption of innocence until there is proof of guilt) which governs a jury in all criminal prosecutions, and is no less proper for a court when exercising a maritime jurisdiction."

Presumptions of fact arise from certain other known facts, and must be of such a character as to exclude all other presumptions.

We have no facts before us on which to base such a presumption as would give the intervenor any interest, pecuniary or otherwise, in this appeal.

The same principles must determine the question of the State's interest, were the case properly before us on appeal at her instance.

In the case of the State ex rel. S. Belden, Attorney General *v.* Markey, Kaiser and al., 21 An. 743, decided in December, 1870, by this court, Chief Justice Ludeling, the organ of the court, said:

"The relators have moved to dismiss the appeal taken by the city of New Orleans on the following among other grounds, to wit:

"That the city is without interest, pecuniary or otherwise, in the suit. The law grants the right of appeal to any one though not a party to the suit, if he have an interest in the subject matter of the suit. C. P. p. 571. But he must allege and show that interest; and it must be direct, pecuniary interest; and cites 1 N. S. 308; 4 N. S. 342; 4 N. S. 622; 2 Rob. 391. The matter at issue is the right to office. Whether the relators or defendants are under the law entitled to hold the offices of alderman and assistant alderman."

In the motion for an appeal it is alleged that the city of New Orleans is interested in this suit in a sum exceeding five hundred dollars.

"The nature of this interest is not stated. In the affidavit of the Mayor accompanying the motion for an appeal, it is alleged that the city of New Orleans has a large pecuniary interest at stake; that the revenues and property of the city are administered by the Common Council, and that both the property of the city of New Orleans and its revenues are valued for the present year at over several millions of dollars; by law placed under the control of the council and would be under the control of W. R. Fish and the other informers if said parties were permitted to exercise said duties and to occupy the seats of the aldermen and assistant aldermen in the Common Council of said city of New Orleans. Defendant further says that the city of New Orleans is a political corporation duly chartered by law; that said city is interested in this suit in a sum exceeding five hundred dollars, and that it is aggrieved by the interlocutory orders and the final judgment herein rendered."

We have examined the record *in vain* to ascertain what the pecuniary interest of the city in this suit is.

State ex rel. Attorney General v. Wharton et als.

How can any pecuniary interest be said to be involved in this suit, where there are neither salaries, fees nor perquisites attached to the offices of aldermen and assistant aldermen, which are the subject of this suit? But whether there can be any pecuniary value attached to said offices or not, it is clear the city has no direct pecuniary interest in the suit.

"It has been decided that in a suit for something which has an appreciable money value, the oath of the appellant may supply the omission of evidence as to the value of the thing in controversy.

"But we are not prepared to say that the *mere affidavit* of any one, that he is interested in a suit between other parties will authorize an appeal by him." 2 Rob. 291, 4 N. S. 342.

He also cites the case of Samuel Johnson v. The city of New Orleans, decided by this court. There is no salary attached to the returning board, and affidavits are the proofs of interest.

I am unable to see what interest, pecuniary or otherwise, Field has in this case to enable this court to grant him the right of appeal. Certainly his interest can not exceed that of the city of New Orleans, who alleged and swore that millions of her property were involved. The appeal was denied her, and I know no law or decision which can sustain his claim to an appeal in this case. This case should be disregarded by this court with great caution. The report shows that it was carefully considered and the previous rulings of this court on the same subject closely scrutinized.

Among the cases cited are Young v. Cenas, 1 N. S. 308, in which Martin, J., held " that a party not injured can not appeal," "it forms no *res judicatum* against him."

Williams v. Trepagnier, 4 N. S. 342, Martin, J., said: "Appellant can not set up complaints which parties did not." 2 Rob. 391.

Henderson v. Cross, Garland, J., said: "The interest must be apparent on the record and pecuniary." In addition to this, that decision was not even referred to as in conflict with the case of Byerly v. Judges of Eighth District Court, 23 An. 768, before cited; this latter case contains no reference whatever to any authority.

It is a common and wise rule of this and all supreme courts to make special reference to cases overruled; it is necessary to preserve the harmony of the authorities.

That the case of Byerly, 23 An. 768, does not overrule that of Markey, Kaiser et al. is clear from the language used by the court without dissent in 24 An. 115, No. 2 of volume —. State ex rel. Byerly v. Walton, Wyly, J., decided February, 1872. This is the same case on its merits as was passed upon in 23 An. 768, November, 1871: " We think the judgment of the lower court erroneous. The relator discloses no interest to justify this litigation. Until he earns fees the city of New Orleans owes him nothing."

It is contended that Field's interest is established by the fact that the Warmoth board has acted and counted him out, and that the title to the office is thereby denied to him.

The fifty-fourth section of the old law creating the original board, approved March 16, 1870, provides that " the returns thus made and promulgated shall be *prima facie* evidence in all courts of justice and before all civil offices until set aside after a contest according to law of the right of any person named therein to hold and exercise the office to which he shall by such return be declared elected."

His rights under this act on the merits are clearly open to vindication through the proper process, and he can have no direct pecuniary interest in this contest unless we presume what the laws forbids, that this board committed frauds; the proof of which could only be made on trial of the merits and the frauds must be of such a character as to cause his defeat. Under any view taken of the case we should not go beyond a remandment to the lower court for trial on its merits.

It is also urged that the action of the board in making the count and returns is final. The statute itself forbids this conclusion, making them, as quoted above, only *prima facie* evidence. But suppose the statute itself to have made special provision that the returns should be final. We should be obliged to notice its conflict with article 73 of the constitution and declare it null and void.

That article provides that: "The judicial power shall be vested in a Supreme Court, in district courts, in parish courts and in justices of the peace." The Legislature can not then invest the Returning Board with judicial powers, and all judicial acts by said board are null and void. They have no more power to create such a tribunal to exercise judicial powers than to create another branch of the Legislative department in violation of article 15 of the constitution.

Appellant further contends that his right of appeal is allowed without regard to any moneyed interest, as the suit is by the State to enforce laws. The judgment is peculiar. The petition does not pray for a judgment in favor of the State. The judge of his own volition gives one in exact terms for the State. It is a safe rule to give only what is asked for in the petition. This compels me to examine the statutes to ascertain what laws, if any, this suit is to enforce. If the original law creating this board, act No. 100, approved March 16, 1870, was in force, I am unable to perceive that its enforcement could be accomplished in this indirect proceeding.

But is not that law dead? I am clearly of the opinion that the act No. 98, approved November 20, 1872, has taken the place of all pre-existing election laws. The only argument advanced against this view is that at the time of the signing of this act the lower house of the General Assembly had ceased to exist, the terms of its members having expired November 4, 1872.

It would seem a sufficient answer to this, to say that the legislative department in this State consists of the House of Representatives and the Senate, and that the terms of a number of Senators had not expired on the twentieth November.  Upon any theory there must have been left a fractional vitality in the legislative department.

Act 43 of the constitution of the State provided that all bills for raising revenue shall originate in the "House of Representatives." Is this a bill to raise revenue?  There can be no such pretense.  How do we know that it did not originate in the Senate?  There is no evidence whatever in the record on the subject.  If it did originate in the Senate, the Governor was able to send it back to the identical body in which it originated as required by the constitution, the terms of a large number of its members not having expired.  Whenever the executive or legislative department has exercised a discretion granted in the constitution, the judicial department can not limit or control it by considerations outside of the constitution.

I find this doctrine no where more emphatically announced than in the decisions of the Supreme Court of Louisiana.

In 11 An. p. 308, State v. Hufty, the court say: "The second branch of our inquiry is, are there any restraints or limitations laid down elsewhere in the constitution which rendered the exercise of the power of removal by this address null and void?  We say elsewhere in the constitution, because if the power is expressly granted, we disclaim the right to limit or control it by considerations outside of the constitution."

"We are not the makers but the expounders merely of the paramount law.  We can not add one jot or tittle to its terms.  We can not by glosses and interpretations subtract one particle from its substance. It would be rebellion in a judge to say that a plain and unqualified grant of power given by the constitution to a particular department was null, because he thought it was against common right."

The Governor's power to sign this law was "a plain unqualified grant of power given by the constitution" to the executive department of the government and is beyond our reach, no matter how unwise his act may have been or how disastrous its consequences.

To trespass upon his constitutional rights is to imperil the whole frame of our government.

The doctrine advanced by appellants is novel and without sanction in American jurisprudence.  Its execution is fraught with such dangers as were doubtless foreseen by the law makers, and they preferred to give a continuous life to that department and not to increase the changes that were inevitable among its members by acts of God beyond their control.  It is equally well settled that the discretion given by law to the Executive is not subject to abridgment by the

judiciary.  Opinions of Attorney Generals, vol. 3, p. 471; vol. 1, 681; vol. 3, 281; vol. 9, 313; vol. 12, —.

The judicial department can only interpose to correct illegalities arising after the Executive's discretion has been exhausted.  This doctrine is elementary in the history of our constitutional form of government.  The preservation of the separate rights of each department has ever been regarded as fundamental in the government of all the States of the Union.  The judicial department is not less interested in it for the maintenance of the rights of the legislative and executive departments than for its own self-preservation.

The last clause of this act, section 71 reads:  "That this act shall take effect from and after its passage and that all other laws on the subject of election laws be and are hereby repealed."

This clause sweeps out of existence all other laws on the same subject matter; it contemplates no revision nor modification; is absolute, unconditional, from its letter, designedly exceptional.

Its wisdom and the consequences to flow from it are not matters within our jurisdiction to determine.

When parties are deprived of constitutional rights by reason of its provisions they will vindicate those rights through the regular channels.

An emphatic indorsement of this view is contained in the case of the State of Louisiana ex rel. Board of School Directors v. the Mayor and Administrators (23 An. 358) of New Orleans, Justice Howell delivering the judgment of this court without dissent:

"Although judges are not to be controlled in their action by a consideration of consequences, we are unable to see the disastrous consequences which seem to be apprehended by counsel from the operation of this law."

It is also contended, that conceding the authority of the Governor to sign this act, it can not operate a removal of the Lynch board, because article 122 of the State constitution provides that all officers "shall continue to discharge the duties of their offices until their successors shall have been inducted into office."

How does this provision apply to this case?

This question is definitely settled by the case of State ex rel. Joseph L. Montieu v. Ursin Lavigne, 23 An. p. 111, decided February, 1871, without dissent.  Wyly, J., the organ of the court, says:  "The question is, was that part of the act creating the office of tax collector repealed by the act of twenty-first of October, 1868, "An Act to provide a revenue to support the State government and the manner of collecting the same."

This act provides for the appointment of an assessor and defines his duties; it also provides, section 44, that the assessor in each and every

parish shall collect the State and parish taxes of his parish; and by section 78, "all laws or parts of laws contrary to the provisions of this act are repealed."

A fair interpretation of the law leads us to the conclusion that the office created by the act of 1864, and claimed by the respondent is abolished by the sections of the revenue act of 1868 to which we have referred.

Of course the term for which this officer was to hold did not continue after the repeal of the law creating the office; for it would be absurd to say there is an unexpired term to an office that has ceased to exist.

The repealing clause of this act, approved March 16, 1870, acts 1870, p. 152, No. 68, is in these words : "That all laws or parts of laws on the subject of raising revenue or the administration of the same contrary to or inconsistent with this act be and the same are hereby repealed."

The repealing clause, section 71 of the act November 20, 1872, is in these words : "That this act shall take effect from and after its passage and that all other laws on the subject of election laws be and are hereby repealed."

This repealing clause is exceptionally sweeping; that of the act of 1870 repealed only all laws contrary to or inconsistent with it, this repeals all other laws on the subject of elections; as before said, it is absolute, unconditional.

This court properly decided in 23 An. 111, cited above, that it would. be absurd "to say there is an unexpired term of an office which had ceased to exist.'"

Consequences can not be considered by judges.

In the case of Craig et al. v. The State of Missouri, 4 Peters 410, Marshall, Chief Justice, the organ of the court said (p. 437): "In the argument we have been reminded by one side of the dignity of a sovereign State; of the humiliation of her submitting herself to this tribunal; of the dangers which may result from inflicting a wound on that dignity; by the other, of the still superior dignity of the people. of the United States, who have spoken their will in terms which we can not misunderstand.

"To this admonition we can only answer, that if the exercise of that jurisdiction which has been imposed upon us by the laws of the United States shall be calculated to bring on those dangers which have been indicated, or if it shall be indispensable to the preservation of the Union and consequently of the independence and liberty of these States, these are considerations which address themselves to those departments, which may with perfect propriety be influenced by them. This department can listen only to the mandates of law, and can tread

only that path which is marked out by duty." This was a *cause celèbre* in the Supreme Court of the United States.

The doctrine announced by this court that the signing of a new act repealing an old is sanctioned by numberless authorities. The passage of statutes in the States and by Congress has repeatedly found courts acting under former laws, and struck them out of existence with cases half tried, and annulled all proceedings at the date of the passage of the act not completed, and has turned the worst criminals loose. 9 Howard 571. Potter's Dwarris on Statutes and Constitutions, pp. 158, 160.

In 5 Wallace, p. 541, Insurance Company *v.* Ritchie, Chase, Chief Justice, said: "It is clear that when the jurisdiction of a cause depends upon a statute the repeal of the statute takes away the jurisdiction. And it is equally clear that where a jurisdiction conferred by a statute is prohibited by a subsequent statute, the prohibition is so far a repeal of the statute conferring the jurisdiction."

The well known case of *ex parte* McCardle, 7 Wallace, 506, decided in 1868, Chase, Chief Justice, the organ of the court, is perhaps stronger on this point than any preceding case. He says: "What then is the effect of the repealing act upon the case before us? We can not doubt as to this. Without jurisdiction the court can not proceed at all in any cause."

As to this, jurisdiction is the power to declare the law, and when it ceases to exist the only function remaining to the court is that of announcing the fact and dismissing the cause.

"The general rule, supported by the best elementary writers, is that when an act of the Legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed." He cited Dwarris on statutes, 538; 13 How. 429; 5 Wall. 541. "It is quite clear, therefore, that the court can not proceed to pronounce judgment in this case, for it has no longer a jurisdiction of the appeal, and judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the constitution and the laws confer. And this is not less upon authority than upon principle."

If an act of Congress can destroy the power of the Supreme Court of the United States to complete the trial of a half completed case, I am unable to perceive why an act of the Legislature of Louisiana has not the power to prevent the completion by a returning board of its own creation, of any acts incomplete at the date of its passage.

But it is urged that act No. 98 of 1872 did not vacate the offices of the returning board created by act No. 00 of 1870, because the number of the board remains the same in the new as under the old law and their duties are the same, that the offices are identical. This is a serious mistake of fact.

Section 2 of act No. 98 takes the place of section 54 in the act of 1870. Its provisions are essentially different. The law of 1870 constituted the Governor, Lieutenant Governor, Secretary of State, T. C. Anderson and John Lynch the board. The law of 1872 provides that five persons, to be elected by the Senate from all political parties, shall be the returning officers for all elections in the State, a majority of whom shall constitute a quorum and have power to make returns of all elections. Under the law of 1872 the election was to be held at every meeting of the Senate ; under the old law Anderson and Lynch were permanent members and the other three were members as long as they remained Governor, Lieutenant Governor and Secretary of State.

The titles of the two acts differ materially. If the title of the act No. 98, 1872, were substituted for the title of the act No. 100, 1870, several provisions in the act of 1870 would be inoperative as conflicting with that provision of the constitution which requires the title of the act to express the object of its provisions. The two acts are radically different. An important and marked difference is in the provision requiring the board under the last act, that of 1872, to be composed of members af all different political parties.

It was specially inserted to prevent an abuse which at the date of the passage of the act was notorious in this State and throughout the whole country. The want of identity in the two laws is apparent on their face.

We are to consider the facts as they were at the institution of this suit in the lower court. Then the Warmoth board were acting as the Returning Board ; they are the defendants in that suit, and if an appeal had been taken by the party cast after the decision of that suit by Judge Dibble they would have been appellants in this court. The last order in the Eighth District Court prior to the intervention, which resulted in this appeal, was one dismissing the Lynch board suit. The Returning Board that was inducted into office at the beginning of the suit continued in office until removed by the order of the United States Circuit Court. It is my opinion that the board thus inducted are not entitled to invoke this article of the constitution of Louisiana. It was inserted in the constitution to regulate changes in office caused by the changes in State laws and appointments and removals by State authorities. To recognize the right of the United States government thus indirectly to settle the title to all offices in the State would unsettle the whole jurisprudence of the State and of the general government itself. Neither the letter nor spirit of the enforcement act justify such an interpretation. It is without precedent.

I am unable to see the disastrous consequences to flow from this new election law, and if I did see them, courts are powerless under the

settled jurisprudence of this State and the whole country to avert them.  9 An. 562; 8 An. 341.

Our duty is to interpret existing laws, not to remedy defective laws ; that is the province of the legislative branch of the government.

This view disposes of the point pressed in argument in this case as to consequences of dismissing this appeal.

There are other legal grounds set up for the dismissal of the appeal which it is unnecessary to notice.

### On the Merits.

I have but little to say on the merits, believing that upon this appeal we have no more authority to consider the merits than to have taken original jurisdiction.

The evidence in the record consists only of *ex parte* affidavits; no witness was cross-examined and these depositions were filed upon the issuance of the rule *nisi*.  Neither the judge *a quo*, nor the plaintiffs, nor their attorneys seem to have regarded them as intended for a trial on the merits of the question of their own title to office.  The majority of this court have decided to use them to determine the question of title to an office in no manner connected with the title of the members of the board.  Field uses by this decision evidence previously unknown to him and his witnesses have to undergo no cross-examination.

A matter of fact apparent on the face of the transcript is that there was no trial on the merits in the court *a qua*.  This, then, is the original trial on the merits.  This court has no original jurisdiction except in habeas corpus cases.  How can we safely deduce a conclusion from these affidavits ?  The witnesses testified for a particular purpose. The court applies the evidence to a different question.  *Non constat* that this testimony would have been the same on the trial of the merits, as cross-examination might have reconciled all contradictions.

Without analyzing the affidavits in detail, suffice it to say, that under article 906 of the Code of Practice, which provides, " but if the court shall think it not possible to pronounce definitely on the cause in the state in which it is, either because the parties have failed to adduce necessary testimony or because the inferior court refuse to receive it or otherwise, it may, according to circumstances, remand the cause to the lower court with instructions as to the testimony which it shall receive to the end that it may decide according to law," the case, in my opinion, should be remanded, if not dismissed for want of jurisdiction. 6 N. S. 319 ; 6 N. S. 635.

In the case of Merchants' Insurance Company *v.* Barroso, Carleton, J., said : " We do not feel altogether satisfied, therefore, to pronounce definitely upon the point in question in the present state of the proceedings, but think the case should be sent back for further proceed-

ings, upon both the law and the facts of the case." See numerous cases cited under article 906, Fuqua's Code of Practice.

If this caution is the established rule where there is other than *prima facie* evidence in the record, *a fortiori*, it should not be deviated from where the record contains only *prima facie* evidence.